1  Nancy G. Ross (*Pro Hac Vice*)
   nross @mwe.com
2  John A. Litwinski (*Pro Hac Vice*)
   jlitwinski @mwe.com
3  McDERMOTT WILL & EMERY LLP
   227 West Monroe Street
4  Chicago, IL 60606-5096
   Telephone:  312.372.2000
5  Facsimile:  312.984.7700

6  Chris C. Scheithauer (State Bar No. 184798)
   cscheithauer@mwe.com
7  McDERMOTT WILL & EMERY LLP
   18191 Von Karman Avenue, Suite 500
8  Irvine, CA  92612-7108
   Telephone:  949.851.0633
9  Facsimile:  949.851.9348

10  Attorneys for Defendants

11  [Additional counsel listed on signature page]

12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| IN RE NORTHROP GRUMMAN CORPORATION ERISA LITIGATION | Master File No. 06-CV-6213 MMM (JCx) |
| | Joint Stipulation Pursuant to Local Rule 37 Re: Defendants' Motion to Compel Payment by Plaintiffs for Document Production |
| THIS DOCUMENT RELATES TO: | |
| All Actions | DATE:      January 26, 2010 |
| | TIME:      9:30 a.m. |
| | CTRM.:    20 |
| | [Courtroom of Magistrate Judge Jacqueline Chooljian] |
| | [Notice of Motion, Declaration of Chris C. Scheithauer, and [Proposed] Order filed separately herewith] |
| | Discovery Cutoff:  Not set |
| | Pretrial Conference:  Not set |
| | Trial Date:  Not set |

16
17
18
19
20
21
22
23
24
25
26
27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

# TABLE OF CONTENTS

**Page**

I.   PARTIES' RESPECTIVE INTRODUCTORY STATEMENTS .................. 1

   A.   Defendants' Introductory Statement .................................................... 1

   B.   Plaintiffs' Introductory Statement ......................................................... 2

II.  THE DISCOVERY ISSUE IN DISPUTE IS WHETHER PLAINTIFFS SHOULD BE REQUIRED TO COMPLY WITH THEIR PRIOR AGREEMENT TO REIMBURSE DEFENDANTS FOR THE COST OF PRODUCTION ............................................................. 4

III. PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES ............ 4

   A.   Defendants' Contentions and Points and Authorities ........................... 4

      1.   Factual Background ................................................................... 4

         a.   Plaintiffs Agreed to Reimburse Defendants for the Cost of Defendants' Production of Documents .............. 4

         b.   Plaintiffs Reneged on their Agreement to Pay Costs of Defendants' Production ................................ 7

         c.   Upon Remand of the Case From The Ninth Circuit, Defendants Made Another Attempt to Resolve the Matter Prior to Filing This Motion ................................ 7

      2.   The Parties' Agreement on Cost-Shifting Should be Enforced ................................................................................... 8

      3.   Defendants' Conclusion .......................................................... 10

   B.   Plaintiffs' Contentions and Points and Authorities ............................ 11

      1.   Facts Surrounding Dispute ...................................................... 11

      2.   The Expenses Claimed by Defendants are Unreasonable, Unnecessary, and Include Unauthorized Production Costs Which Plaintiffs Never Agreed to Pay ..................... 13

      3.   Although Plaintiffs Willingness To Consider Paying For Reasonable And Necessary Copy Costs Was Limited To Objectively Burdensome Production, Defendants' Unreasonably Claim That EVERY Document Produced Was Highly Burdensome And Onerous .................................. 15

      4.   Defendants Fail To Demonstrate Reasonable Reliance On An Agreement That Does Not Reflect A Meeting Of The Mind On Material Points ........................................................ 16

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2

# TABLE OF CONTENTS
## (continued)

|  |  | Page |
|---|---|---|
| 5. | Plaintiffs' Willingness To Consider Cost Sharing Was Never Inclusive Of The Exorbitant Charges Submitted By Defendants, | 18 |
| 6. | Conclusion | 20 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4

Brown v. Castillo,
  2006 U.S. Dist. LEXIS 34793 (E.D. Cal. 2006) ................................................ 9

5

6

In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust
  Litigation,
  669 F.2d 620 (10th Cir. 1982) ..................................................... 9, 17

7

8

Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.,
  2008 WL 1805727 (W.D. Wash. 2008) ............................................ 15, 16, 18

9

Morgenstern v. International Alliance of Theatrical Stage Employees, Local 16,
  2006 U.S. Dist. LEXIS 62386 (N.D. Cal. 2006) ................................................ 9

10

11

Oppenheimer Fund, Inc. v. Sanders,
  437 U.S. 340 (1978) ..................................................... 10, 16, 17

12

Rodger v. Electronic Data Systems Corp.,
  155 F.R.D. 537 (E.D.N.C. 1994) ..................................................... 9, 18

13

14

Rowe Entertainment, Inc. v. William Morris Agency, Inc.,
  205 F.R.D. 421 (S.D.N.Y. 2002) ..................................................... 9, 10, 17

15

## FEDERAL STATUTES

16

Fed.R.Civ.P. 26(b)(2) ..................................................... 15

17

Fed.R.Civ.P. 26(b)(2)(B) ..................................................... 6, 9, 17

18

Fed.R.Civ.P. 26(c) ..................................................... 6, 9, 17

19

Fed.R.Civ.P. 26(c)(1) ..................................................... 9

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    PARTIES' RESPECTIVE INTRODUCTORY STATEMENTS

### A.    Defendants' Introductory Statement

Plaintiffs unconditionally agreed to reimburse defendants for the costs incurred in connection with plaintiffs' expensive and onerous document requests. Plaintiffs should be held to their agreement, particularly given that defendants, in reliance on this agreement, incurred a substantial expense copying the documents into the specific electronic pdf searchable format plaintiffs demanded.

Defendants initially objected to plaintiffs' document requests and were prepared to seek a protective order given the burdensome nature and undue cost associated with the requested discovery.  During the meet and confer process in 2007, however, plaintiffs' counsel agreed that plaintiffs would reimburse defendants for such costs of production.  Plaintiffs counsel put that agreement in writing, stating:

> "To the extent that Defendants are withholding production due to awaiting an agreement to pay costs, Plaintiffs state that they will, in accordance with local practice, pay the reasonable and necessary copy costs associated with the production of any documents sought in their discovery requests."

See Declaration of Chris C. Scheithauer ("Scheithauer Decl."), at ¶ 7 and Exhibit C at pp. 1-2.

In good faith reliance on that written agreement, defendants copied close to 900,000 pages of documents in the specific pdf searchable (OCR-scanned) format demanded by plaintiffs.  Plaintiffs now refuse to reimburse defendants for the over $214,694.41 incurred with third party vendors as a result of the production.  The amount sought, notably, does not include additional expenses incurred by defendants internally in connection with the production.  Through this motion, defendants request an order enforcing the parties' prior agreement on cost-shifting.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Declaration of Chris C. Scheithauer in Support of
Motion to Compel Plaintiffs to Comply With
Agreement re: Discovery Costs

1

CASE NO. 06-CV-06213 MMM (JCX)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

### B.   Plaintiffs' Introductory Statement

Defendants ask the Court to enforce terms of a written agreement between the parties that never existed. Defendants incorrectly assert that Plaintiffs "unconditionally agreed to reimburse defendants for the costs incurred in connection with" document production in this case and that they incurred substantial expense in reliance on this agreement. To the contrary, Plaintiffs explicitly limited any agreement to payment of (1) "copy costs"; (2) which are "reasonable and necessary." Defendants would have this Court believe that Plaintiffs agreed to give them *carte blanche* to impose unlimited and unreasonable fees for a broad range of production-related non-copy costs. Yet, Defendants fail to identify any written confirmation of this alleged agreement, despite the copious amount of written exchanges between the parties and the undeniable propensity of a large defense firm to "paper the file."  Claiming a specific recollection of alleged verbal conversations from two years ago is simply not reliable or credible.

Notwithstanding the gross failings of Defendants' motion and the complete lack of evidence that they incurred any specific "reasonable and necessary" amount for pure "copy costs," this Fortune 100 Company asks its own employees who have brought this putative class action to pay over $214,000 in unreasonable and unnecessary costs that far exceed mere copy costs. The following examples illustrate Defendants' overreaching attempts to take advantage of Plaintiffs' good faith offer to share in basic, reasonable and necessary copy costs:

1.   Demanding Plaintiffs pay for items that were never produced, including Master DVDs; 17,000 pages of "blowback" documents; and multiple sets of the same CD's when only one of each CD was produced to Plaintiffs;

2.   Charging Plaintiffs for shipping costs of materials to Defendants' own counsel, technical time for their vendors' mistakes, and charging twice as much on some invoices for the same service without justification;

McDermott Will & Emery LLP
Attorneys At Law
Orange County

3.    Billing Plaintiffs for charges Defendants incurred long before there was ever any agreement to pay copy costs; and

4.    Demanding that Plaintiffs pay rates that are nearly twice the prices available from the vendor Plaintiffs would have selected for copy services without affording them the opportunity to utilize their own vendor or advising them in advance that they would incur unjustifiably higher costs and then suddenly dumping 15 invoices on Plaintiffs when it was too late to avoid these unnecessary costs, including one invoice which had been withheld for almost 8 months; and to all of which Plaintiffs promptly objected.

What is undeniable is that the bulk of these massive charges simply are not limited to copy costs. If they were, the reasonable charges would be but a fraction of the amount claimed. Moreover, the invoices provided by Defendants fail to adequately identify what services were provided or for whose benefit, including Defendants themselves, the services were provided. Clearly, any claimed benefit would not be for Plaintiffs alone. In the face of these gross ambiguities, if not outright failings, Plaintiffs made numerous attempts to clarify the services and charges for which Defendants seek compensation. However, Defendants defiantly refuse to submit any additional documentation to support these excessive, unnecessary, and unauthorized charges.[1]  As such, Plaintiffs have properly refused to sign over what amounts to a blank check to Defendants, and the motion to compel should be denied.

_____

[1] Pursuant to Judge Real's March 26, 2007 Order (Doc. 45), the cases of *Grabek, et al. v. Northrop Grumman Corporation* and *Heidecker, et al. v. Northrop Grumman Corporation*, were combined into the currently captioned *In re Northrop Grumman Corporation ERISA Litigation*. Defendants have not stated whether they are demanding payment from the *Grabek* Plaintiffs or *Heidecker* Plaintiffs or both; or whether they are demanding one plaintiffs' group to pay for the entire production costs for all the parties. Defendants point to no written agreement to justify any plaintiffs group to pay for any costs that inure to the benefit of other parties.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

**II.    THE DISCOVERY ISSUE IN DISPUTE IS WHETHER PLAINTIFFS SHOULD BE REQUIRED TO COMPLY WITH THEIR PRIOR AGREEMENT TO REIMBURSE DEFENDANTS FOR THE COST OF PRODUCTION**

Plaintiffs previously agreed to reimburse defendants for the costs associated with complying with plaintiffs' document requests, including complying with plaintiffs' request to produce documents in electronic pdf searchable form (OCR-scanned).  Defendants provided the requested documents in the form requested and submitted the third party vendor invoices to plaintiffs for payment in the amount of $214,695.41 pursuant to the agreement.  Plaintiffs now state that they have "no intention" of providing any reimbursement to defendants for the prior production.  The issue before this Court is:  Should plaintiffs be ordered to pay the costs associated with complying with their document demands where plaintiffs previously agreed to do so and defendants relied on that agreement?

**III.    PARTIES' CONTENTIONS AND POINTS AND AUTHORITIES**

**A.    Defendants' Contentions and Points and Authorities**

**1.    Factual Background**

**a.    Plaintiffs Agreed to Reimburse Defendants for the Cost of Defendants' Production of Documents**

In February 2007, plaintiffs served discovery requests on defendants, including a set of interrogatories and a set of document requests.  Accompanying the discovery was a letter from plaintiffs' counsel, Elizabeth Hubertz, demanding that defendants produce responsive documents in certain formats.  Ms. Hubertz specifically stated that at a minimum "we must have the documents in searchable pdf's (OCR-scanned), with the metadata preserved."  See Scheithauer Decl., at ¶2 and Exhibit A.

In March 2007, defendants served their original responses to Plaintiffs' First Request for Production of Documents.  In responding to plaintiffs' requests, defendants objected on the grounds that plaintiffs' requests were overbroad and included documents irrelevant to plaintiffs' claims.  The requests were not narrowly

1  tailored but instead sought virtually everything relating to the ERISA plans at issue,

2  thereby requiring the production of literally hundreds of thousands of pages of

3  documents and correspondence, much of which defendants contend was not

4  reasonably calculated to lead to the discovery of admissible evidence.  It was, and

5  still is, defendants' position that the overbroad nature of the requests required the

6  production of unnecessary documents and was wasteful discovery, at best.  The cost

7  of searching files, electronic databases and backup tapes for the material demanded

8  by plaintiffs, which required the assistance of both defendants' internal IT services

9  and outside vendors, was extraordinarily high.  The costs was further increased by

10  plaintiffs' demand that the documents be copied in searchable pdfs (OCR-scanned)

11  with metadata preserved.  See Scheithauer Decl., ¶¶ 3-4.

12      In their responses, defendants objected to plaintiffs' document requests

13  because of the undue burden and cost in complying, particularly given the vast

14  amount of documents in electronic form.  Nevertheless, defendants agreed to

15  produce such documents with the understanding that plaintiffs would reimburse the

16  cost.  Defendants wrote in their responses that they would not produce documents

17  until certain items were resolved, including "an agreement that plaintiffs will

18  compensate defendants for the high cost of producing documents responsive to the

19  request."[2]  See Scheithauer Decl., ¶ 5 and Exhibit B (e.g., Response to Req. No. 1).

20      Following plaintiffs' receipt of defendants' responses and objections to the

21  document requests, counsel for the parties engaged in a meet and confer process,

22  both in writing and verbally, which lasted over a period of months.  Defendants

23  explained that the cost of locating the responsive documents, copying them to the

24  format demanded by plaintiffs, and then producing them was expected to be

25  extraordinarily high (hundreds of thousands of dollars) and that defendants should

26

27  _____
[2] There was also the issue of a stipulated protective order governing the handling of
confidential information (such as financial information of ERISA plan participants,
among other things).  That issue was resolved by way of a stipulated order and is
28  not relevant here.  Id. at ¶ 5.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1    not be required to shoulder that burden exclusively.  Defendants' counsel pointed

2    out that Rule 26(b)(2)(B) and 26(c) of the Federal Rules of Civil Procedure, in fact,

3    contemplate cost shifting under such circumstances.  During a telephone

4    conversation on June 18, 2007, plaintiffs' counsel stated that plaintiffs may be

5    amenable to paying for the production costs, but that she wanted to check with her

6    co-counsel.  See Scheithauer Decl., ¶ 6.

7         On June 25, 2007, plaintiffs counsel confirmed the agreement and formally

8    conveyed plaintiffs' agreement to pay for defendants' costs in complying with the

9    production requests.  Specifically, on pages 1 and 2 of the letter plaintiffs' counsel

10   wrote as follows:

11        "To the extent that Defendants are withholding production due to

12        awaiting an agreement to pay costs, Plaintiffs state that they will, in

13        accordance with local practice, pay the reasonable and necessary copy

14        costs associated with the production of any documents sought in their

15        discovery requests."

16   See Scheithauer Decl., ¶ 7 and Exh. C at pp. 1-2.

17        After receiving plaintiffs' June 25, 2007 confirmation, on June 29, 2007, the

18   undersigned spoke telephonically with plaintiffs' counsel to confirm that defendants

19   would begin a rolling production of documents.  Plaintiffs' counsel again confirmed

20   that plaintiffs were willing to pay for the production and that plaintiffs understood

21   that in light of the large volume of documents that a rolling production was

22   appropriate and that defendants would submit invoices to plaintiffs when the rolling

23   production was substantially completed.  See Scheithauer Decl., ¶ 8.  Thereafter, on

24   June 6, 2007, defendants began a rolling production of documents as they were

25   located, processed, and the documents were copied to the pdf searchable format

26   requested by plaintiffs.  See Scheithauer Decl., 9 and Exh. D.  To date, defendants

27   have produced close to 900,000 bates-numbered documents, most of which are in

28   the pdf searchable format (OCR-scanned) as plaintiffs requested.  Id. at ¶ 10.

McDermott Will & Emery LLP
Attorneys At Law
Orange County

McDermott Will & Emery LLP
Attorneys At Law
Orange County

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b. Plaintiffs Reneged on their Agreement to Pay Costs of Defendants' Production

On December 7, 2007, defendants sent a letter requesting reimbursement of document production costs per the parties' agreement. Enclosed with the letter were the various third-party invoices in the total amount of $214,695.41 for external costs incurred in copying the documents for production to plaintiffs in the format requested. See Scheithauer Decl., ¶ 11 and Exhibit E.

Following receipt of defense counsel's December 7, 2007 request for payment, plaintiffs counsel indicated that they had no intention of making any payment. See Scheithauer Decl., ¶ 12 ("Needless to say Chris, you will not be getting a check from us."). Astonishingly, plaintiffs reversed course and stated that they were under no obligation to reimburse defendants. Id.

Defense counsel then engaged in a Local Rule 37 meet and confer conference with plaintiffs' counsel. Notwithstanding the prior agreement, plaintiffs' counsel stated in December 2007 that plaintiffs would not, under any circumstances, pay for any of defendants' production costs. Plaintiffs' counsel, Ms. Wisniewski, indicated that she had discussed the matter with her firm's lead partner, Jerome Schlichter, and the decision was that plaintiffs would not pay. See Scheithauer Decl., ¶ 12.

At that time, the Ninth Circuit had imposed a stay on the district court proceedings as a result of plaintiffs' interlocutory appeal of Judge Real's denial of class certification. Accordingly, defense counsel notified plaintiffs' counsel that, once the stay was lifted, defendants would proceed with a motion to compel payment of the costs that plaintiffs had originally promised to pay. See Scheithauer Decl., ¶ 12.

### c. Upon Remand of the Case From The Ninth Circuit, Defendants Made Another Attempt to Resolve the Matter Prior to Filing This Motion

Following remand of the case from the Ninth Circuit, defense counsel spoke to plaintiffs' new counsel at the same firm, Nelson G. Wolff, on November 24,

1  2009 about the lingering issue of plaintiffs' promise to pay for the cost of

2  defendants' production.  Defense counsel relayed to him the prior conversations

3  with his former partner, Ms. Wisniewski.[3]  See Scheithauer Decl., ¶ 13.

4       During the November 24, 2009 meet and confer conference, defendants

5  reiterated that although they had completed most of their production prior to the

6  Ninth Circuit stay, there were some additional documents that were located in the

7  intervening two years that defendants were prepared to produce.  Plaintiffs

8  demanded the immediate production of those additional documents.  Defendants

9  believe that before such supplemental production should occur, plaintiffs should

10 comply with their prior promise to reimburse defendants for the cost of the

11 production.  Mr. Wolff denied any such prior agreement.  See Scheithauer Decl., ¶

12 14.

13      Mr. Wolff followed up that conversation with a letter, dated November 24,

14 2009, expressly denying any prior agreement to pay defendants' production costs

15 and further denying that his firm had received any documentation concerning the

16 cost of the production.  See Scheithauer Decl., ¶ 15 and Exhibit F.

17      In another effort to meet and confer on these issues, defense counsel

18 recounted in a December 2, 2009 letter to Mr. Wolff the prior dealings with Ms.

19 Wisniewski, including plaintiffs' prior written agreement to pay for defendants

20 production costs and a description of the production-related invoices that were

21 previously sent to  plaintiffs' counsel.  See Scheithauer Decl., ¶ 16 and Exhibit G.

22 Notwithstanding the above, plaintiffs still refuse to pay for defendants' production

23 costs as previously agreed, thereby necessitating this motion.

### 2.    The Parties' Agreement on Cost-Shifting Should be Enforced

24
25      The Federal Rules of Civil Procedure contemplate that a "court may, for

26 good cause, issue an order to protect a party or persons from … undue burden or

27

28 [3] Mr. Wolff apparently replaced Ms. Wisniewski who left plaintiffs' counsel' law firm in early February 2008.  See Scheithauer Decl., ¶ 12.

Joint Stipulation Pursuant to Local Rule 37 Re:
Motion to Compel Payment by Plaintiffs for
Document Production    8    CASE NO. 06-CV-06213 R (JCX)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1  expense" including specifying the terms of discovery.  Fed.R.Civ.P. 26(c)(1).

2  Moreover, the Rules specifically provide that "a party need not provide discovery"

3  of electronically stored information "not reasonably accessible because of undue

4  burden or cost."  Fed.R.Civ.P. 26(b)(2)(B).

5      It is well established that a "court has the authority to condition the

6  production of documents on the requesting party paying the costs of such

7  production."  See Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED.

8  CIV. PRO. BEFORE TRIAL (The Rutter Group 2009), 11:1938.  See also In re

9  Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d

10  620, 623 (10th Cir. 1982) (although $250,000 would be a fraction of defendants'

11  total assets, "it is difficult for us to believe that such a sum would not constitute an

12  undue burden and expense within the meaning of Fed.R.Civ.P. 26(c)" and stating

13  that "we see no reason why a district court, exercising its discretion under

14  Fed.R.Civ.P. 26(c) should be reluctant to place the costs of discovery upon the

15  party deriving benefit therefrom"); Rodger v. Electronic Data Systems Corp., 155

16  F.R.D. 537, 542 (E.D.N.C. 1994) ("wasteful discovery" is best avoided by

17  requiring the requesting party to pay the entire cost of gathering and copying the

18  requested materials); Brown v. Castillo, 2006 U.S. Dist. LEXIS 34793, * 3 (E.D.

19  Cal. 2006) (the requesting party must pay for the costs of the documents requested

20  in discovery); Morgenstern v. International Alliance of Theatrical Stage Employees,

21  Local 16, 2006 U.S. Dist. LEXIS 62386, *16 (N.D. Cal. 2006) (cost-shifting to the

22  requesting party is appropriate where the discovery imposes an undue burden or

23  expense that outweighs the likely benefit of the discovery).

24      In Rowe Entertainment, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421

25  (S.D.N.Y. 2002), the court noted that where the costs of producing the requested

26  discovery is "substantial" then there is a strong reason to make the requesting party

27  bear the expense.  Id. at 431.  As noted in Rowe Entertainment, the United States

28  Supreme Court has found that an "expense of $16,000" is not an insubstantial sum

McDermott Will & Emery LLP
Attorneys At Law
Orange County

1   even for a defendant with assets exceeding one-half billion dollars. Id. (citing

2   Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 361-62 (1978)). The Rowe

3   court also noted that other courts have determined that costs of even $5,000 to

4   $6,000 were "sufficiently significant to warrant cost-shifting." Id. at 431. In Rowe,

5   the court found that as a matter of law, the costs of the proposed discovery of

6   $24,000 to $87,000 "would be substantial by any definition." Id. (further noting

7   that "the magnitude of these costs favors cost-shifting").

8        In this case, the court need not conduct a comprehensive analysis to

9   determine whether the *hundreds of thousands of dollars* defendants have spent on

10  plaintiffs overbroad discovery requests are "substantial" enough to warrant cost-

11  shifting. The parties already *reached an agreement* that plaintiffs would reimburse

12  defendants for the cost. The problem is plaintiffs' counsel now refuses to abide by

13  that agreement. See Scheithauer Decl., ¶ 7.

14       In reliance on plaintiffs' verbal and written acknowledgement that plaintiffs

15  would reimburse defendants for the cost, defendants copied and produced close to

16  900,000 pages of documents in a pdf searchable (OCR-scanned) format as

17  demanded by plaintiffs. Copying the documents into the special format demanded

18  by plaintiffs was particularly expensive. See Invoices attached as part of Exhibit E

19  to Scheithauer Decl. (invoices totally $214,695.41). Notably, defendants are only

20  seeking reimbursement for the *external* costs (i.e., third party vendors) incurred in

21  copying the documents into the format requested by plaintiffs, notwithstanding that

22  Northrop Grumman itself engaged its own IT business sector to assist with the

23  production.

24           **3.    Defendants' Conclusion**

25       Plaintiffs' attempt to renege on the cost-shifting agreement between the

26  parties is unconscionable. Defendants request an order enforcing the parties' prior

27  agreement on cost-shifting and ordering (1) plaintiffs to pay defendants

28  $214,694.41 within ten days of the order; (2) that plaintiffs are not entitled to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1  receive any further discovery responses or supplemental productions from

2  defendants until the above amount is paid; (3) that plaintiffs shall be responsible for

3  the costs incurred in connection with any future document production; and (4) that

4  plaintiffs pay defendants' reasonable attorneys fees for having to bring this motion.

### B.  Plaintiffs' Contentions and Points and Authorities

6    The issue raised by Defendants' motion is whether Plaintiffs should be

7  obligated to pay production expenses and unreasonable/unnecessary copying costs

8  incurred by Defendants, despite the fact that Plaintiffs explicitly limited their

9  willingness to pays reasonable and necessary copying costs for documents

10  produced to Plaintiffs that were responsive to Plaintiffs' requests for production.

### 1.  Facts Surrounding Dispute

12    On February 7, 2007, Plaintiffs served Defendants with requests for

13  production and interrogatories. See Declaration of Nelson G. Wolff ("Wolff Decl"),

14  at ¶3, Exs. 1 and 2. In that cover letter, Plaintiffs informed Defendants that

> [Plaintiffs] would prefer that [Defendants] produce all data in its native
> format . . . [and that Plaintiffs] have a vendor that can take the collected
> documents in their native formats, and perform the conversion to pdfs,
> producing only the converted documents to us. Therefore, we ask that the
> collected documents in their native format be produced to the vendor.
> However, if your client would rather produce already converted documents
> directly to us in the above-listed format, that is acceptable as well.

19  See Scheithauer Decl., at ¶2; Ex. A at 2-3. On March 12, 2007, Defendants filed

20  their responses to the Request for Production that included multiple general and

21  boilerplate objections to "each and every" request. See Scheithauer Decl., at ¶3; Ex.

22  B. Defendants never identified any basis to support its contention that production

23  would be "highly burdensome" or "costly." See e.g. Id. at pp. 5-6.

24    By letter dated June 25, 2007, Plaintiffs advised that:

> To the extent Defendants are withholding production due to awaiting an
> agreement to pay costs, Plaintiffs state that they will, in accordance with
> local practice, pay the reasonable and necessary copy costs associated with
> the production of any documents sought in their discovery requests.

28  See Wolff Decl., at ¶4 and Scheithauer Decl., Ex. C at 1-2 (emphasis added). At no

1   point did Plaintiffs relinquish the limitations set forth in this narrow statement, and

2   at no point did they ever agree to "unconditionally" reimburse Defendants for all

3   third party vendor invoices without any input as to costs or selectivity of

4   documents.

5       Defendants did not submit to Plaintiffs any invoices related to the document

6   production until December 7, 2007, months after Defendants had received them, at

7   which time they produced 15 separate invoices, dating as far back as April of 2007.

8   Scheithauer Decl. at 64-65. These invoices included charges for vast, unauthorized

9   production associated with over 1 million pages of documents. See Wolff

10  Decl., at ¶7 and Scheithauer Decl., Ex. E. Plaintiffs promptly rejected the demand

11  for payment since it was clearly well beyond the scope of Plaintiffs' proposal.

12  Scheithauer Decl. at 8, ¶12. It was not even until the December 7 communication

13  that Defendants first claimed in writing that their decision to produce documents in

14  "searchable pdfs," as opposed to the native format preferred by Plaintiffs, was

15  burdensome and that Plaintiffs should pay for that cost too. Scheithauer Decl., Ex.

16  E at p 1.

17      When Plaintiffs pressed Defendants on their incredible claim for

18  reimbursement, Defendants refused or were unable to justify the charges. Plaintiffs

19  reminded Defendants that they had agreed to identify the specific documents they

20  were withholding based on their belief that it would require an onerous search,

21  which was the impetus to the limited cost sharing agreement – yet, Defendants

22  never identified any search that they considered to be onerous. Wolff Decl., at ¶8-9,

23  Ex. 4 at Parts B and D. Defendants provided Plaintiffs a cost estimate or an

24  opportunity to review the documents and copy only the necessary ones. Id.

25  Defendants failed to provide Plaintiffs the opportunity to secure a separate vendor

26  as outlined in Plaintiffs' February 7, 2007, letter and never identified any

27  documentation showing that Plaintiffs had ever agreed to pay for any costs beyond

28  "copy costs." Id. at ¶8 , Ex. 4 at Parts C and E. Two years later, Defendants now

McDermott Will & Emery LLP
Attorneys At Law
Orange County

1  attempt to resurrect this claim, and only in an attempt to thwart Plaintiffs' request

2  for supplementation of discovery. Scheithauer Decl. at pp. 84-85. Not surprisingly,

3  Defendants again have refused to provide any documentation to support their claim

4  that Plaintiffs should pay all costs involved in the document production. Id. at 85.[4]

5  
6
**2.    The Expenses Claimed by Defendants are Unreasonable, Unnecessary, and Include Unauthorized Production Costs Which Plaintiffs Never Agreed to Pay.**

7       Plaintiffs' June 25, 2007, letter unambiguously is limited to "copy" costs.

8  However, the invoices submitted by Defendants clearly reflect unauthorized

9  production expenses, many of which clearly could never be considered to be "copy

10  costs," including the following:[5]

11          i.  Multiple entries for billed technical time for the third-party

12              vendors, including technical errors committed by Defendants'

13              favored vendor. Scheithauer Decl. at pp. 73, 75, and 78.

14          ii. Production of documents in the TIFF format when Plaintiffs

15              asked for and received PDF formatting. Scheithauer Decl. at pp.

16              69-70.

17         iii. Production DVDs that Plaintiffs never received. Scheithauer Decl.

18              at pp. 66, 70, and 78; Wolff Decl. at ¶10.

19         iv.  Items only benefiting Defendants and their counsel, such as

20              duplication of CDs and shipping costs to Defense counsel in

21              Irvine, California. Scheithauer Decl. at p. 68.

22          v.  17,000+ pages of printed blowbacks that Plaintiffs never received,

23              but presumably went to Defendants. Scheithauer Decl. at p. 79;

24              Wolff Decl. at ¶10

25

26  _____
    [4] Defendants blatantly mischaracterize Plaintiffs' repeated inquiry. Although
27  Defendants have submitted invoices, they have refused to provide the level of detail
    necessary to establish which, if any, of the charged amounts are for reasonable and
28  necessary copy costs. Wolff Decl., at ¶8-9 and Scheithauer Decl., Exhibit F.
    [5] All invoices are included in Exhibit E attached to the Scheithauer Decl.

McDermott Will & Emery LLP
Attorneys At Law
Orange County

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vi.   Documents processed and work done months before the date of any purported agreement to share copy costs. Invoice IY022228A.

vii.  Documents covering a bates range never produced to Plaintiffs.[6] Invoice IY022228A.

viii. What appears to be the deleting of metadata, which Plaintiffs specifically requested be kept. Scheithauer Decl. at p. 78.

The invoices also show inconsistencies in the amounts charged for the same services and, in one instance, on the very same invoice.[7]  There can be no dispute that Defendants have gone beyond any reasonable interpretation of Plaintiffs' limited written statement about copy costs. Plaintiffs reiterated this position, that had already been clearly stated, in two separate emails explaining that Plaintiffs had never agreed to pay for "imaging" or "DVDs." Wolff Decl., at ¶8, Ex. 4. Plaintiffs position has been clear throughout this dispute that these, and other similar charges on the invoices, are in no way "copying" costs and not something Plaintiffs ever agreed to pay.

Interestingly, Defendants have demonstrated a dismissive attitude when it comes to sharing Plaintiffs' costs in responding to their discovery requests, further showing that there has not been a genuine meeting of the minds of the parties in this case. On July 16, 2007, in response to Defendants' June 13, 2007, Request for Production No. 1, Plaintiffs stated they "will produce responsive documents in [their] possession, subject to an agreement to pay the costs associated with such production." Wolff Decl., at ¶13. Defendants' August 24, 2007, reply letter claimed that Plaintiffs alone should bear those costs because Defendants "have produced

---

[6] Plaintiffs have never received documents with a bates range of "MIN00000001-MIN00004230." Wolff Decl., at ¶10.
[7] Cf. Invoice ED0228640 charging $85 for each "DVD Master" with Invoice IL0231184 showing a rate of $35/disc. See also Invoice IY022228A showing charges of $49.14 and $419.40 for the very same service. Since Defendants refused to respond to Plaintiffs' disputes about these charges, they remain unprovable.

1    many thousands of documents on CD." Wolff Decl., at ¶14, Ex. 5 at p 2. If

2    Defendants had actually believed Plaintiffs had been obligated by a written

3    agreement entered only one month earlier to be completely responsible for

4    Defendants' production costs, they would not have sought to avoid paying for

5    Plaintiffs' discovery costs simply because Defendants had produced a lot of

6    documents. Also, a July 25, 2007, email from Defendants' counsel Christopher

7    Scheithauer made reference to documents being delayed because of the absence of

8    an in-house information technology individual who is responsible for getting

9    documents "properly imaged, bates numbered and out to you." Wolff Decl., at ¶15,

10   Ex. 6. This does not comport with the invoices of outside vendors doing the same

11   services and further calls into question the reliability of Defendants' cryptic

12   invoices.

> **3.    Although Plaintiffs Willingness To Consider Paying For Reasonable And Necessary Copy Costs Was Limited To Objectively Burdensome Production, Defendants' Unreasonably Claim That EVERY Document Produced Was Highly Burdensome And Onerous.**

16        Plaintiffs' statement that they would consider paying reasonable and

17   necessary copy costs was limited, on its face, "[t]o the extent Defendants [were]

18   withholding production" based on a claim of undue burden. It is well established

19   that the "responding party bears the burden of showing that 'identified sources are

20   not reasonably accessible in light of the burdens and costs required to search for,

21   retrieve, and produce whatever responsive information may be found.'" Mikron

22   Industries, Inc. v. Hurd Windows & Doors, Inc., 2008 WL 1805727, *1 (W.D.

23   Wash. 2008) (quoting Advisory Committee's Notes on 2006 Amendment to

24   Fed.R.Civ.P. 26(b)(2)). Defendants have failed to identify, at any time in the last

25   three years, which documents were highly burdensome and costly. It is implausible

26   to believe that the retrieval or production of every single document in this case was

27   onerous. In fact, Defendants' own admissions show that is not the case and to

28   conclude otherwise, effectively would render a sea change in discovery costs to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1    automatic cost shifting in every case.

2          In Defendants' supplemental responses to Plaintiffs' requests for production,

3    they referenced an "agreement" in response to some, but not all, requests, implicitly

4    acknowledging  that not all responsive documents were onerous or costly to

5    produce. Wolff Decl., at ¶5, Ex. 3. Nonetheless, Defendants invoices suggest their

6    charges apply to the production of every single document in the case. Plaintiffs'

7    June 25, 2007, letter disputed Defendants' claim that production of every document

8    in this case was onerous. Wolff Decl., at ¶X and Scheithauer Decl., Ex. C. This

9    inconsistency is heightened by an invoice showing that 10,000+ pages of

10   documents were actually in Defendants' possession two months *before* Plaintiffs'

11   June 25, 2007 letter was even written (Scheithauer Decl. at p. 78), yet Defendants

12   claim a retroactive entitlement to various costs for documents already in their

13   possession.

14          **4.    Defendants Fail To Demonstrate Reasonable Reliance On
15                 An Agreement That Does Not Reflect A Meeting Of The
                   Mind On Material Points.**

16          "The rules of discovery presume that 'the responding party must bear the

17   expense of complying with discovery requests.'" Mikron Industries, 2008 WL

18   1805727  at *1 (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358

19   (1978). Defendants would have this Court believe that the cost of production in

20   and of itself allows them to shift the entirety of the cost of production to Plaintiffs.

21   However, the shifting of costs does not hinge on the expense to the producing party

22   alone, but rather the weighing of numerous relevant factors. The case law cited by

23   Defendants wholly supports this position.

24          "Because of the shortcomings of [a] bright line rule, courts have
25          adopted a balancing approach taking into consideration such factors as:
26          (1) the specificity of the discovery requests: (2) the likelihood of
             discovering critical information; (3) the availability of such
27          information from other sources; (4) the purposes for which the
             responding party maintains the requested data (5) the relative benefit
28

McDermott Will & Emery LLP
Attorneys At Law
Orange County

1
2
3
4

McDermott Will & Emery LLP
Attorneys At Law
Orange County

> to the parties of obtaining the information; (6) the total cost associated
> with production; (7) the relative ability of each party to control costs
> and its incentive to do so; and (8) the resources available to each party.
> Each of these factors is relevant in determining whether discovery
> costs should be shifted…"

Rowe Entertainment Inc v. William Morris Agency, Inc., 205 FRD 421, 429

(S.D.N.Y. 2002). Defendants make no effort to address any factor other than cost,

other than a vague indication that they receive no benefit from the production, in

direct contrast to the case law they rely on for that assertion. "[w]here a defendant

in a proceeding performs the work necessary to respond to a subpoena duces tecum,

his own case, to some degree at least, is benefited thereby." In re Coordinated

Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 623 (10th

Cir. 1982) (relying on Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358

(1978)). Clearly, Plaintiffs are not the only party receiving a benefit from the

production in this case. Defendants cannot dispute that, to some degree at least,

they too receive a benefit from their production. Despite Defendants assertions,

expense alone is no reason to shift the entire cost of production.

    Plaintiffs' June 25, 2007, letter also included the condition "in accordance

with local practice." Defendants have failed to identify any local or federal practice

to suggest that Plaintiffs were agreeing to give them *carte blanche* to unilaterally

pick any vendors and pricing without Plaintiffs' input, much less approval, hold on

to numerous invoices for several months before disclosing them *en mass*, and

deciding without Plaintiffs' input which documents to copy. Defendants admitted

that during the meet and confer process prior to Plaintiffs' June 25, 2007, letter,

Rules 26(b)(2)(B) and 26(c) of the Federal Rules of Civil Procedure were

discussed. See Scheithauer Decl. ¶6. These rules, and the authority cited by

Defendants in their portion of this Joint Stipulation, specifically contemplate a joint

effort to keep costs to a minimum. Yet, here, Defendants have made no effort to

limit their expenditures to reasonable copy costs.

McDermott Will & Emery LLP
Attorneys At Law
Orange County

1    "[T]he responding party should present details sufficient to allow the

2    requesting party to evaluate the costs and benefits of searching and producing the

3    identified sources." Mikron, 2008 WL 1805727, *1. "The photocopying costs shall

4    not exceed rates charged by low-cost commercial copying businesses…Plaintiffs'

5    and Defendant's counsel are directed to confer…*to minimize these costs.*" Rodger

6    v. Electronic Data Systems Corp, 155 F.R.D. 537,542 (E.D.N.C. 1994) (emphasis

7    added). Simply informing Plaintiffs vaguely about a potential cost is not adequate

8    disclosure to support the agreement Defendants now seek to foist upon Plaintiffs to

9    pay for unnecessary production and copy costs, especially in light of their lack of

10    identification of highly burdensome documents. Defendants' after-the-fact claim

11    does not establish an agreement before the expense was incurred unilaterally.

12    Defendants' attempted transfer to Plaintiffs of production costs they never

13    agreed to is made even more egregious when Defendants' first and second vendors'

14    rates are compared, illustrating Defendants' failure to attempt to minimize costs.

15    The first vendor chosen by Defendants apparently charged $1,170 per gigabytes

16    of electronic data processed.[8] Defendants' second vendor charged $850 for the very

17    same processing of electronic data.[9] The $330 difference per gigabyte of electronic

18    data would have resulted in a savings of approximately $12,771.52. Defendants not

19    only want Plaintiffs to pay for production costs they never agreed to pay for, but

20    they want them to pay an unreasonably excessive amount for those costs, neither of

21    which is acceptable.

22    **5.    Plaintiffs' Willingness To Consider Cost Sharing Was Never Inclusive Of The Exorbitant Charges Submitted By Defendants,**

23

24    As detailed herein, Plaintiffs statement concerning paying for any costs was

25    limited to "copying" costs only. There can be no dispute that "copying" costs would

26    include only those costs for services necessary to prepare copies of the documents

_____

27    [8] Scheithauer Decl. at pp. 69-70, 78.The invoices appear to show approximately 40 gigabytes of electronic data processed.

28    [9] Scheithauer Decl. at p. 80.

1    for Plaintiffs. The only necessary service of this type identified by Defendants is the

2    costs of copying the CDs to be delivered to Plaintiffs. Any other costs associated

3    with preparing the documents for production and use in this case inured to the

4    benefit of Defendants. Further, as detailed above, the preparation of documents for

5    production is not in and of itself a burdensome cost.

6          Therefore, the only costs that could arguably be associated with "copying"

7    are the costs related to copying the CDs to be delivered to Plaintiffs. However, this

8    total amount is impossible to discern from the invoices provided by Defendants

9    because the invoices indicate chargers for the copying of more sets of CDs than

10   were received by Plaintiffs. Plaintiffs are unable to determine from Defendants'

11   invoices what charges were incurred for the copying of the CDs actually delivered

12   to Plaintiffs. However, this cost would pale in comparison to what Defendants are

13   requesting, perhaps even as little as 1% of the total costs Defendants seek from

14   Plaintiffs.

15         Even this small amount of expense is made even more egregious by the fact

16   that Defendants blatantly disregarded Plaintiffs' original request to use their own

17   vendor to copy said CDs. See Scheithauer Decl., Ex. A at p 2. A minimal review of

18   Defendants' invoices where CD copying costs can actually be determined reveals

19   costs greatly exceeding what was available to Plaintiffs from their own vendor.

20   Plaintiffs own vendor would have prepared copies of these CDs for nearly half the

21   costs charged by Defendants' vendor.[10]

22         Despite the fact that Defendants benefited from the OCRing of the

23   documents, they contend that this process was somehow burdensome to them. Yet,

24   they once again ignore the fact that this is work Plaintiffs said from the very

25   beginning that they were willing to have their own vendor do. Even if this work

26   could somehow be determined to be a copying cost, Defendants never gave

27   Plaintiffs an opportunity to use their own vendor for the work, as Plaintiffs said

28   ──────────────
     [10] Compare Decl. of Loretta Jones to Scheithauer Decl. at p. 67.

McDermott Will & Emery LLP
Attorneys At Law
Orange County

they could do. Like the copying of the CDs, Plaintiffs own vendor would have done this work for nearly half the costs charged by Defendants' vendor.[11] Defendants' original vendor charged nearly double what Plaintiffs vendor would charge for these same services. To the extent Plaintiffs were willing to pay for any costs, they certainly were not willing to pay double what Plaintiffs own vendor would charge. Especially when Plaintiffs plainly stated from the beginning that they were willing to have their own vendor do this work.

### 6.    Conclusion

Defendants fail to prove a meeting of the minds on any agreement which they now seek to enforce, after unilaterally incurring excessive and unnecessary production expenses. Moreover, Defendants fail to establish, with requisite evidentiary specificity and foundation, the necessity and reasonableness of any copy costs for any documents specifically being withheld on the basis of objective burden. Accordingly, Defendants' motion to compel should be denied. Alternatively, Plaintiffs respectfully request that the Court limit any claim to one for limited copy costs that were reasonable and necessary, and for such other relief the Court deems justified.

---

[11] Compare Decl. of Loretta Jones to Scheithauer Decl. at p. 74.

McDermott Will & Emery LLP
Attorneys At Law
Orange County

1

2    Dated:    December 31, 2009        McDERMOTT WILL & EMERY LLP
                                        Nancy G. Ross
3                                       Chris C. Scheithauer
                                        John Litwinski
4

5                                       By: /s/ Chris Scheithauer
6                                           Chris C. Scheithauer
                                            Attorneys for Defendants
7

8    Dated:    December 31, 2009        SCHLICHTER, BOGARD & DENTON
                                        Jerome J. Schlichter
9                                       Nelson G. Wolff
                                        Jason P. Kelly
10

11                                      By: /s/ Nelson G. Wolff
12                                          Nelson G. Wolff
                                            Attorneys for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
ORANGE COUNTY