UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

| Present: The Honorable | Jacqueline Chooljian, United States Magistrate Judge | |
|---|---|---|
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS (DOCKET NOS. 194, 218)**

  Pending before this Court is Plaintiffs' Motion to Compel Production of Documents ("Plaintiffs' First Motion") (Docket No. 194). In conjunction with Plaintiffs' First Motion, the parties have submitted and the Court has considered a Joint Stipulation ("JS I"), Declaration of Nelson G. Wolff ("Wolff I Decl.") with exhibits (Wolff I Ex.") (Docket No. 196), a Declaration of Chris C. Scheithauer ("Scheithauer I. Decl.") with exhibits ("Scheithauer I Ex.") (Docket No. 197), Plaintiffs' Supplemental Memorandum ("Plaintiffs' Supp. I Memo") (Docket No. 214), and Defendants' Supplemental Memorandum ("Defendants' Supp. I Memo") (Docket No. 213).

  Also pending before this Court is Plaintiffs' Motion to Compel Production of Improperly Withheld Documents ("Plaintiffs' Second Motion") (Docket No. 218). In conjunction with Plaintiffs' Second Motion, the parties have submitted and the Court has considered a Joint Stipulation ("JS II") (Docket No. 219), a Declaration of Nelson G. Wolff ("Wolff II Decl.") with exhibits ("Wolff II Ex.") (Docket No. 220), a Declaration of Chris C. Scheithauer ("Scheithauer II Decl.") with exhibits and an under seal exhibit ("Scheithauer II Ex.") (Docket No. 221, 239), Plaintiffs' Supplemental Memorandum ("Plaintiffs' Supp. II Memo") (Docket No. 247), and Defendants' Supplemental Memorandum ("Defendants' Supp. II Memo") (Docket No. 244).

  The Court collectively refers to Plaintiffs' First Motion and Plaintiffs' Second Motion as "Plaintiffs' Motions."

  The parties have further submitted at the Court's direction, and the Court has considered in connection with Plaintiffs' Motions: a Supplemental Declaration of Nelson G. Wolff ("Wolff Supp. Decl.") with exhibits (Docket No. 246), Plaintiffs' Notice of Errata Re Exhibits 1-5 to Wolff Supp. Decl. with exhibits ("Wolff Errata Ex.") (Docket No. 252), a Supplemental Declaration of Chris C. Scheithauer ("Scheithauer Supp. Decl.") with exhibits ("Scheithauser Supp. Ex.") (Docket No. 245), an Errata to Scheithauser Supp. Ex. E ("Scheithauser Errata Ex.") and a Joint Status Report (Docket No. 253). The foregoing supplemental submissions significantly narrow, but do not eliminate the disputes that are the subject of Plaintiffs' Motions.

  The Court held a hearing on Plaintiffs' Motions on June 29, 2010 at 9:30 a.m.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

Based on the Court's consideration of the parties' submissions in connection with Plaintiffs' Motions, the parties' arguments at the hearing on this matter, and for the reasons discussed below, the Court rules as set forth below.

**I.      Pertinent Facts**

On September 28, 2006, plaintiffs filed the Complaint in this action. On March 14, 2007, plaintiffs filed the currently operative First Amended Complaint.[1] Plaintiffs allege that defendants breached their fiduciary duty to plaintiffs in connection with the administration of two ERISA plans: the Northrop Grumman Savings Plan, Plan 011 (the "NGS Plan") and the Northrop Grumman Financial Security and Savings Program, Plan 010 (the "FSS Plan") (collectively the "ERISA Plans in Issue"). More specifically, plaintiffs allege that defendants breached their fiduciary duty to plaintiffs by, among other things: (1) causing the ERISA Plans in Issue to enter into agreements with service providers under which the plans paid fees and expenses that were unreasonable and/or not incurred solely for the benefit of the plans' participants; (2) allowing and causing the plans to pay fees and expenses that were unreasonable and/or not incurred solely for the benefit of the plans' participants; and (3) failing to appoint fiduciaries (*e.g.*, investment managers) who lived up to their fiduciary duties, to monitor/oversee those appointed, and to remove those who breached their fiduciary duties.

On February 7, 2007, plaintiffs served defendants with Plaintiffs' First Set of Requests for Production ("Document Request(s)"). (Wolff I Decl. ¶ 9; Scheithauer I. Decl. ¶ 9; Scheithauer I. Ex. A). On March 12, 2007, defendants served plaintiffs with defendants' Responses and Objections to [the Document Requests] ("Defendants' Response(s)"). (Wolff I Decl. ¶ 10; Scheithauer I. Decl. ¶ 3).

On July 2, 2007, a stipulated Protective Order was filed in this action. (Docket No. 77; Wolff I Ex. A; Scheithauer I. Ex. G). The Protective Order, among other things, sets forth procedures which apply in the event material alleged to be protected by the attorney-client privilege or work product doctrine is inadvertently produced and the effect of such production. (Wolff I Ex. A at ¶ 12). Among other things, paragraph 12 of the Protective Order: (1) calls for the producing person, within ten days of learning of the inadvertent or unintentional disclosure, to provide written notice identifying the material; (2) indicates that such inadvertent or unintentional production, shall not constitute a waiver of the attorney-client privilege or work product immunity absent a further court order; (3) calls for a receiving party who disagrees with the assertion of privilege/work product immunity or contends that there has been an intentional waiver of privilege to make an appropriate motion to the court; and (4) states that the party claiming the privilege/immunity has the burden of proving that the privilege/immunity exists. (Wolff I Ex. A at ¶ 12).

---

[1]A motion for leave to file a Second Amended Complaint is currently pending before the assigned District Judge.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

Defendants represent that due to the volume of documents needed to be reviewed (including over one million e-mail files) and attendant practical considerations, defendants utilized an advanced document imaging database (Concordance database combined with IPro) to electronically manage documents, including running word and phrase searches of all documents in the database (which includes all documents currently in issue), reviewing the documents electronically, and placing electronic tags (such as "responsive" and "privileged") on the documents. (Scheithauer I. Decl. ¶¶ 15, 16). A list of attorneys and law firms, including those currently at issue, was developed and used as part of the electronic screening process. (Scheithauer I. Decl. ¶ 17). The foregoing approach was supplemented with an individual review by an attorney of many of the documents in the database for quality control. (Scheithauer I. Decl. ¶ 17).

On July 6, 2007, defendants began their rolling production of documents in response to the Document Requests. (Wolff I Decl. ¶ 11; Scheithauer I. Decl. ¶ 13; Scheithauer Ex. H). On August 24, 2007, defendants produced their First Privilege Log as to 22 documents. (Wolff II Decl. ¶ 2; Wolff II Ex. A). On September 14, 2007, defendants produced their Second Privilege Log containing 12 entries. (Wolff II Decl. ¶ 3; Wolff II Ex. B). On at least September 25, 2007 and September 27, 2007, defendants produced multiple documents in response to the Document Requests. (Wolff I Decl. ¶ 6; Wolff I Exs. E-1, E-2).

On September 28, 2007, the case was stayed pending an interlocutory appeal of an order denying class certification. On September 30, 2009, the matter was remanded.

On February 8, 2010, defendants made available to plaintiffs for inspection additional documents, copies of which were produced on March 22, 2010. (Wolff I Decl. ¶¶ 4-7; Wolff I Ex. F-1). On March 8, 2010, defendants produced their Third and Fourth Privilege Logs as to over 600 additional documents. (Wolff II Decl. ¶ 14; Wolff II Exs. C, D).

Defendants represent that to date, defendants have produced close to a million pages of discovery. (Scheithauer I. Decl. ¶ 17). Defendants further represent that all of the inside counsel identified in defendants' first four privilege logs were involved in the communications recorded in the privilege logs in their legal capacity. (Scheithauer Decl. ¶ 12).

On March 19, 2010, plaintiffs' counsel voluntarily returned to defendants an apparently inadvertently produced self-evaluation of an attorney at defendants' law firm who was not working on the instant case. (Scheithauer I. Decl. ¶ 22; Scheithauer I. Ex. K). Defendants represent that this was the first indication of any problem with the production, and that it prompted defendants to conduct a systematic electronic review of all of defendants' previous productions to attempt to assess whether other documents had been inadvertently produced. (Scheithauer I. Decl. ¶¶ 22-23).

On April 1, 2010, defendants invoked paragraph 12 of the Protective Order, notifying plaintiffs in writing that on the previous day (March 31, 2010), it had come to their attention that defendants had inadvertently and unintentionally produced numerous documents protected by the attorney-client privilege and work product doctrine and identifying such documents by bates numbers. (Wolff I Ex. C; Scheithauer I. Decl. ¶ 24; Scheithauer I. Ex. L).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

On April 7, 2010, defendants again invoked paragraph 12 of the Protective Order, notifying plaintiffs in writing that it had recently come to their attention that defendants had inadvertently and unintentionally produced additional documents protected by the attorney-client privilege and work product doctrine and identifying such documents by bates numbers. (Wolff I Ex. D; Scheithauer I. Decl. ¶ 25; Scheithauer I. Ex. M).

On April 14, 2010, defendants provided plaintiffs with a Fifth Privilege Log which contained entries for clawed back documents. (Wolff I Decl. ¶ 8; Wolff I Ex. G; Scheithauer I. Decl. ¶ 27; Scheithauer I. Ex. N).

In total, defendants have assertedly clawed back almost 300 documents totaling over 1200 pages. (Wolff I. Decl. ¶¶ 4, 5; Wolff I Exs. B, C, D; Scheithauer I. Decl. ¶ 28; Scheithauer I. Ex. O). Plaintiffs represent that the clawed back documents span the years 2000 to 2006 and that Department of Labor filings reflect that during such time period, the ERISA Plans In Issue have paid three specified law firms a total of over $3 million. (Wolff I Decl. ¶ 19; Wolff I Ex. L).

Defendants represent that all of the clawed back documents "involve communications involving an attorney legal review or advice concerning (a) legal advice of outside or inside counsel regarding designing or amending the ERISA plan; (b) legal advice concerning describing or communicating completed plan changes to participants; (c) documents concerning counsel's review and comment on responses to individual plan participants' inquiries, complaints and claims; (d) comments on plan compliance with statutory obligations; or (e) communications involving counsel concerning plan sponsors, fiduciaries, and trustees seeking legal advice concerning the performance of their duties to avoid personal liability and for their own protection or advice concerning fiduciary exposure. Each of the persons involved in the communications were attorneys, employees and agents of defendants and Northrop who were necessarily involved in the communication as recipients and facilitators of legal advice or work product." (Scheithauer I. Decl. ¶ 28).

The current fact discovery cut-off in this action is August 27, 2010. The current expert discovery cut-off is October 18, 2010.

**II.     Pertinent Law**

   **A.     Attorney-Client Privilege**

The purpose of the attorney-client privilege is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

Wigmore on Evidence describes the several elements of the privilege this way: (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived. United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (citing 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961)); see also United States v. Plache, 913 F.2d 1375, 1379 n.1 (9th Cir.1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

"[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co., 449 U.S. at 390. It encompasses communications made by a client's employees to counsel, acting as such, to enable counsel to be in a position to give legal advice to the client. Id. at 390-97. Courts have also concluded that it encompasses communications made to counsel, acting as such, by independent contractors and other third parties who are functional equivalents of employees. See Trustees of the Electrical Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 7-9 (D.D.C. 2010); Memry Corp. v. Kentucky Oil Technology, N.V., 2007 WL 39373 *2 (N.D. Cal. 2007); Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 491-92 (Fed. Cl. 2000); In re Bieter Co., 16 F.3d 929, 935-40 (8th Cir. 1994).

The fact that a person is a lawyer does not make all communications with that person privileged. Martin, 278 F.3d at 999 (citation omitted). An entity cannot insulate documents from discovery simply by sending a "cc" to counsel. United States Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994) (attorney-client privilege would apply to documents copied to attorney if documents contain communications intended to be confidential and dominant purpose of communications was to obtain legal advice); see also Clavo v. Zarrabian, 2003 WL 24272641 *2 (C.D. Cal. 2003) (insufficient evidence presented to demonstrate that documents exchanged between company employees which were merely copied to counsel were privileged; mere transmittal of documents to lawyer insufficient to bring documents under umbrella of attorney-client privilege), reconsideration granted in non-pertinent part, 2004 WL 3708920 (C.D. Cal. 2004).

Although the Ninth Circuit does not appear to have addressed the issue, other circuits and other district courts in the Ninth Circuit have adopted the "dominant purpose" test in assessing whether a communication is privileged, concluding that a communication is privileged if the "dominant" or "primary" purpose of the communication is to obtain legal advice. See, e.g., County of Erie, 473 F.3d 413, 420 & n.7 (2d Cir. 2007) (applying "predominant purpose" test) (citing, *inter alia*, 24 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5490 (1986) (observing that while this issue is "seldom discussed by the courts and writers," the majority rule is the "dominant purpose doctrine")); Mora v. Baroni, 2008 WL 2509143 *7 (E.D. Cal. June 23, 2008); United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065 (N.D. Cal. 2002).[2]

---

[2]The court notes, however, that at least two federal district courts in the Ninth Circuit have instead adopted a broader test which examines whether the assertedly privileged document was created "because of" a legal purpose. See In re CV Therapeutics Inc., Securities Litigation, 2006 WL 1699536 *3-4 (N.D. Cal. June 16, 2006), as clarified on reconsideration, 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006); Visa USA Inc. v. First Data Corp., 2004 WL 1878209 *4, 7 (N.D. Cal. Aug. 23, 2004). Such courts have employed the "because of" test based upon the Ninth Circuit's use of a similar test, discussed below, in the context of assessing whether a document was prepared in anticipation of litigation for purposes of the work product doctrine. See In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management), 357 F.3d 900, 908 (9th Cir. 2004) (The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

      Correspondence which reveals the motive of the client in seeking representation, litigation strategy, or the specific nature of services provided, such as researching particular areas of law, fall within the privilege. Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (9th Cir. 1992) (citations omitted). Communications between a lawyer and a client which enable the lawyer to perform a legal function are also privileged. United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996), cert. denied, 520 U.S. 1167 (1997) Legal advice regarding the client's business affairs are encompassed within the attorney-client privilege. Id. Accordingly, the attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. Id.

      The privilege does not apply to communications with or involving third parties. United States v. Palmer, 536 F.2d 1278, 1281 (9th Cir. 1976); United States Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 161 (E.D.N.Y. 1994)); see also ChevronTexaco Corp., 241 F. Supp. 2d at 1070 (privilege generally does not extend to communications between the client or his attorney and a third party).

      The burden to establish all the elements of the privilege is on the party asserting the privilege. United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." Weil v. Investment/Indicators, Research and Management, Inc., 647 F.2d 18, 24 (9th Cir. 1981). Nonetheless, "hard cases should be resolved in favor of the privilege, not in favor of disclosure . . . '[A]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.' "). United States v. Mett, 178 F.3d 1058, 1065 (9th Cir.1999) (quoting Upjohn Co., 449 U.S. at 393).

    **B.    Attorney Work Product**

      The work product doctrine/privilege, codified in Rule 26(b)(3) of the Federal Rule of Civil Procedure, generally protects from discovery documents prepared (1) in anticipation of litigation or for trial; and (2) by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent). See F.R. Civ. P. 26(b)(3); In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management) ("Torf"), 357 F.3d 900, 906 (9th Cir. 2004). A document should be deemed prepared "in anticipation of litigation," and thus eligible for work product protection under Rule 26(b)(3) if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. Torf, 357 F.3d at 907 (citation omitted). The "because of" standard does not

---

     ²(...continued)
substantially similar form but for the prospect of that litigation.") (citation omitted); see also In re CV Therapeutics Inc., Securities Litigation, 2006 WL 1699536 *3-4 (N.D. Cal. June 16, 2006) (considering totality of circumstances in assessing whether document was generated because of legal purpose, including the context of the communication, the content of the communication, the facts surrounding the creation of the document, the nature of the document, the breadth of the recipient list, and whether the communication explicitly sought advice and comment), as clarified on reconsideration, 2006 WL 2585038 (N.D. Cal. Aug. 30, 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

consider whether litigation was a primary or secondary motive behind the creation of a document. Id. at 908. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation. Id. (citation omitted). However, a generalized fear of litigation is insufficient. See Lewis v. Wells Fargo & Co., 266 F.R.D. 433 (N.D. Cal. 2010) (generalized fear of litigation does not turn compliance audit into attorney work product). The timing of the preparation of the documents in issue relative to litigation is a relevant factor to consider in assessing whether the documents were prepared in anticipation of litigation. See Lewis, 266 F.R.D. at 440-41 (fact that audits in issue began at least a year before litigation filed suggest that documents would have been created in substantially similar form even if no litigation anticipated).

  Rule 26(b)(3) distinguishes between work product, which consists of factual material prepared in anticipation of litigation or trial ("fact work product"), and opinion work product, which consists of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." F.R. Civ. P. 26(b)(3). Fact work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. See F.R. Civ. P. 26(b)(3); Upjohn Co. v. United States, 449 U.S. 383, 400-02 (1981). Opinion work product is discoverable only "when mental impressions are at issue in a case and the need for the material is compelling." Holmgren v. State Farm Mutual Automobile Insurance Co., 976 F.2d 573, 577 (9th Cir. 1992).

  The party claiming work product immunity has the burden of proving the applicability of the doctrine. United States v. City of Torrance, 163 F.R.D. 590, 593 (C.D. Cal. 1995); see also United States v. Roxworthy, 457 F.3d 590, 593 (6th Cir. 2006) (party asserting work product privilege bears burden of establishing that documents party seeks to protect were prepared in anticipation of litigation). To meet this burden, a party must demonstrate that its documents adhere to the essential elements of the privilege by making a prima facie showing that the privilege protects the information the party intends to withhold. In re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992) (citation omitted). The Ninth Circuit has recognized a number of means of sufficiently establishing a privilege, one of which is the privilege log approach. Id. at 1171 (citing Dole v. Milonas, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989)).

  **C. Waiver**

  Although as general matter, "[a] party is not entitled to discovery of information protected by the attorney-client privilege[,]" Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted), the privilege is not absolute. Gomez v. Vernon, 255 F.3d 1118, 1131 (9th Cir.), cert. denied, 534 U.S. 1066 (2001). It may be waived "either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents." Id.

  An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public. Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir.), cert. denied, 540 U.S. 1013 (2003);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

Tennenbaum v. Deloitte & Touche, 77 F.3d 337, 341 (9th Cir. 1996) (citing Weil, 647 F.2d at 25).[3] "Inadvertence" of disclosure does not as a matter of law prevent the occurrence of waiver. Weil, 647 F.2d at 24. Disclosures that effect an express waiver are typically within the full control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure-they merely recognize the waiver after it has occurred. Bittaker, 331 F.3d at 719 & n.4 ("express" waiver need not be effectuated by words or accompanied by litigant's subjective intent; rather, privilege may be waived by client's, and in some cases the attorney's, actions, even if the disclosure that gave rise to the waiver was inadvertent) (citations omitted).

Rule 502 of the Federal Rules of Evidence provides that a disclosure of a privileged document does not operate as a waiver of the privilege if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).[4] Fed. R. Evid. 502(b). The Advisory Committee Notes reflect that Rule 502(b) "does not

---

[3]As noted above, however, confidential communications between third parties such as independent contractors, who are the functional equivalents of employees, and counsel, acting in such capacity, may be privileged where the communication is intended to facilitate the attorney's ability to render legal advice to the client. See, e.g., Memry Corp. v. Kentucky Oil Technology, N.V., 2007 WL 39373 *2 (N.D. Cal. 2007) (characterizing disclosure to independent contractors and other third parties who are functional equivalents of employees as "exception" to general rule that disclosure to third parties waives the attorney-client privilege). Although the parties cite Hyundee v. United States, 355 F.2d 183 (9th Cir. 1965), for essentially the same proposition, such case is better understood as being one of a line of cases regarding the "common interest/joint defense" privilege. See Hyundee, 355 F.2d at 185 (client's admissions to his own criminal attorney in presence of co-defendant and attorney for co-defendant protected by attorney-client privilege; communications concerned common issues and were intended to facilitate representation in possible subsequent proceedings). Participants in a joint or common defense or individuals with a community of interests may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney. Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 578 (N.D. Cal. 2007). The joint defense privilege protects not only the confidentiality of communications passing from a party to his or her attorney but also from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. United States v. Austin, 416 F.3d 1016, 1021 (9th Cir. 2005). The privilege applies irrespective of whether or not litigation has begun or is contemplated. Continental Oil v. United States, 330 F.2d 347, 350 (9th Cir. 1964).

[4]Rule 26(b)(5) addresses claims of privilege and work product protection. As to information withheld on such bases, it requires a party expressly to so claim, and to describe the nature of the items not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). As to information produced which is subject to such a claim, Rule 26(b)(5) indicates that the party making the claim may notify the receiving party of such claim and the basis therefor, that the receiving party must promptly return or

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently."

Rule 502 further recognizes that a federal court may order that the privilege is not waived by disclosure connected with the litigation pending before it and that the parties' agreement on the effect of a disclosure in a federal proceeding is binding upon them. Fed. R. Evid. 502(d), 502(e). Rule 502 applies in all proceedings commenced after the date of its enactment [September 19, 2008] and, insofar as is just and practicable, in all proceedings pending on such date of enactment. See Fed. R. Evid. 502 Effective and Applicability Provisions.[5]

### D. The "Fiduciary Exception"

The Ninth Circuit recognizes a "fiduciary exception" to the attorney-client privilege. Mett, 178 F.3d at 1062-63 (citations omitted). In the ERISA context, the fiduciary exception provides that one acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of "plan administration." Id. at 1063 (citation omitted). The Ninth Circuit has noted that the fiduciary exception is rooted in two distinct rationales: (1) an ERISA trustee has a duty to disclose to plan beneficiaries all information regarding administration – a rationale which can be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle; and (2) an ERISA trustee, as a representative for the beneficiaries of the trust, is not the client – a rationale which effectively means that the "fiduciary exception" is not an "exception," and that the trustee never enjoyed the privilege as to advice regarding plan administration in the first place. Id. at 1063 (citations omitted).

The Ninth Circuit has recognized that under either rationale, the fiduciary exception has limits and does not completely debilitate an ERISA trustee from enjoying a confidential attorney-client relationship. Id. The Ninth Circuit has described the matter by reference to a spectrum:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend himself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

---

[4](...continued)
otherwise dispose of such information, and that the receiving party may promptly present the information to the court under seal for a determination of the claim. Fed. R. Civ. P. 26(b)(5)(B).

[5]Although the instant action commenced prior to September 19, 2008, both parties have invoked Rule 502, in addition to the Protective Order. (JS 6 [Plaintiffs]; JS 18-22 [Defendants]). Accordingly, this court finds it just and practicable to apply such rule to the instant case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

Id. at 1064.  In assessing where a particular communication falls on the spectrum, the Ninth Circuit has considered both "the context and content" of the communication.  As to the former, the Ninth Circuit has focused on the timing of the communication relative to other pertinent events and the degree to which it may have been reasonable for a trustee to seek legal advice regarding personal exposure or civil/criminal liability (*e.g.*, whether "trouble was in the air" and the communication came in the midst of a crisis or followed a criminal investigation; whether the communication was generated prior to or after litigation).  Id. at 1064.  As to the latter, the Ninth Circuit has focused on whether the content reveals that the communication was, on the one hand, for the benefit of the plan/beneficiaries/was rendered on a matter of plan administration (*e.g.*, the prospective propriety of a trust making financial advances to beneficiaries, or taking a particular position vis-a-vis tax authorities) or, on the other hand, was defensive in nature and constituted advice regarding a trustee's personal civil and criminal exposure regarding events that had already occurred).  Id. at 1064.

   The Ninth Circuit has rejected an expansive view of the fiduciary exception which would cover all legal communications which "relate to fiduciary matters" noting that:  (1) such a broad interpretation would (a) threaten to swallow the entirety of the attorney-client privilege for ERISA trustees; and (b) unmoor the fiduciary exception from its justifying rationales; (2) where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not disclosure; and (3) from a policy perspective, an uncertain attorney-client privilege would likely result in ERISA trustees shying away from legal advice regarding the performance of their duties.  Id. at 1065.

   The Ninth Circuit has also discounted reliance on the terms of an engagement letter to assess whether a particular communication is subject to the fiduciary exception as the nature of the representation may have altered over time and as "it is not the terms of an engagement letter, but rather the nature of the particular attorney-client communication that is dispositive."  Id. at 1065.

   In Fischel v. Equitable Life Insurance, 191 F.R.D. 606 (N.D. Cal. 2000), the court analyzed the legal landscape regarding the "fiduciary exception" predating Mett and offered some practical guidance with respect to the application of the fiduciary exception in light of Mett.  It noted that prior to Mett, the fiduciary exception had been deemed to apply "when an attorney advise[d] a fiduciary about a matter dealing with fiduciary matters – such as plan administration," and that the exception had been deemed not to apply when "an attorney advise[d] a fiduciary on matters pertaining to non-fiduciary duties – such as plan design, amendment, and termination[.]"  Id. at 608 (citations omitted).  The court pointed out that this rule was difficult to apply due the lack of guidance in distinguishing between fiduciary and non-fiduciary activities, the fact that the scope of "plan administration" – as to which the cases seemed to agree was encompassed within fiduciary activities – was a matter of continuing redefinition, and that prior to Mett, the cases failed satisfactorily to address the situation in which a trustee sought advice regarding his/her own liability as to matters that pertain to fiduciary obligations, such as plan administration.  Id.  It read Mett as endorsing a test that focuses on the intended recipient of the advice and the purpose for which the advice was being sought.  Id. at 609.  More specifically, it concluded that Mett limits the scope of advice that relates to "plan administration," by excluding from it any advice whose goal is to advise the trustee about the legal implications of actions and decisions undertaken while performing its fiduciary obligations.  Id.

   Applying the foregoing analysis to the disputed documents before it, the Fischel court further concluded, after an *in camera* review of a sample of documents and based on their content and context:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

(1) documents that comprised legal advice from outside counsel or inside counsel regarding the legal implications and potential liability for the employer trustee and its Board in amending and designing the ERISA plan were protected by the work product doctrine and did not fall within the fiduciary exception as it was apparent that litigation was anticipated and the advice related to the potential exposure of the trustees in their personal capacity; (2) documents reviewed by inside counsel that were intended to describe or communicate changes in plan benefits to beneficiaries fell within the fiduciary exception as the documents focused on wordsmithing/editing the language disclosing plan changes for the benefit of the beneficiaries as opposed to rendering legal advice to the trustees regarding the substance and advisability of those changes; (3) internal documents in which inside counsel reviewed and commented on drafts of response letters from management to agents' inquiries, complaints and claims did not fall within the fiduciary exception as the advice given was rendered in anticipation of litigation between the company and its agents; and (4) internal documents in which inside counsel reviewed and commented on the structure and design of the plan, including the plan's compliance with its statutory obligations under the Internal Revenue Code fell within the fiduciary exception as the documents did not reflect a concern regarding the trustee's personal liability, but instead focused on explaining and assisting with fiduciary obligations with the intended purpose of benefitting the plan.  Id. at 609-10.

Although at least one out-of-district/circuit case, post-Mett, suggests that the entity/person paying the legal bills is a factor to consider in assessing whether legal advice falls within the fiduciary exception (Herndon v. U.S. Bancorp Asset Management, Inc., 2007 WL 781788 *3 (E.D. Mo. 2007)), Mett, as noted above, emphasizes that it is "the nature of the particular attorney-client communication that is dispositive."  Mett, 178 F.3d at 1062-63.

     **E.**     **Propriety of *In Camera* Review of Documents**

           **1.**     ***In Camera* Review to Assess Whether Documents are Privileged/Work Product**

If a party asserting a privilege has made a threshold showing sufficient to demonstrate the essential elements of the privilege in issue, an opposing party seeking to justify an *in camera* review must show a factual basis sufficient to support a reasonable good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.  In re Grand Jury Investigation, 974 F.2d at 1075.  If the party makes such a showing, the decision whether to conduct an *in camera* review rests within the discretion of the court.  Such discretion is to be guided by the factors enumerated in United States v. Zolin, 491 U.S. 554 (1989) (courts should make decision to review in light of amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of exception warranting production of material).  Id. at 1075.

           **2.**     ***In Camera* Review to Assess Whether Privileged/Work Product Documents Fall Within Fiduciary Exception**

In assessing whether a privileged/work product document falls within the fiduciary exception, courts appears to favor *in camera* review of at least a sampling of documents.  See, e.g., Mett, 178 F.3d at 1064-65 (court considered context and content of communication in assessing whether it fell within fiduciary exception, noting that nature of communication key to analysis); Fischel, 191 F.R.D. at 607 (as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

court unable to resolve potential applicability of fiduciary exception on basis of privilege log, court conducted *in camera* review of sample of documents to assess how and whether exception applied).

### III. Discussion and Orders

Based upon the Court's consideration and analysis of the parties' submissions and argument, the facts in this case, and the above-referenced law, this Court rules as set forth below.

    **A.**    **Plaintiff's First Motion**

Plaintiffs' First Motion, as narrowed by subsequent submissions, argues that (1) defendants have waived any privilege/work product protection with respect to clawed back documents reflected on the version of the Fifth Privilege Log which constitutes Wolff Errata Ex. 5 (a) by failing to take reasonable steps, before production, to prevent disclosure of such documents; and/or (b) by intentionally disclosing/sharing certain such documents with other third parties; and (2) even assuming such privilege/protection has not been waived, at least three such documents (bearing bates numbers NG7_00030962-NG7_00030974, NG 0801148, and NG 0810472-NG 0810478) fall within the fiduciary exception and should be produced. (Plaintiffs' Supp. I Memo at 2-5; Wolff Supp. Decl. ¶ 12; Wolff Errata Ex. 5). For the reasons discussed below, the Court denies Plaintiffs' First Motion except to the extent it seeks an *in camera* review of documents assertedly subject to the fiduciary exception.

    1.    The Court finds no waiver or need for an *in camera* review of the attorney-client privilege/work product protection relative to the clawed back documents in issue based upon defendants' alleged failure to take reasonable steps, before production, to prevent disclosure. Though clearly imperfect, the Court finds that the above-summarized procedures utilized by defendants in producing the electronic documents in issue to plaintiffs, constitute reasonable steps to prevent the disclosure of privileged/protected documents. Accordingly, whether analyzed under the terms of the Protective Order or under Fed. R. Civ. P. 502(b), the Court finds no waiver by virtue of defendants' alleged failure to take reasonable steps, before production, to prevent disclosure.

    2.    The Court finds no waiver or need for an *in camera* review of the attorney-client privilege/work product protection relative to the clawed back documents in issue based upon defendants' intentional disclosure/sharing of such documents with other third parties. Defendants' counsel attests under penalty of perjury that each of the documents in issue involve communications involving an attorney legal review or advice and that the persons involved in the communications were attorneys, employees and agents of defendants and Northrop who were necessarily involved in the communication as recipients and facilitators of the legal advice or work product. (Scheithauer I. Decl. ¶ 28) (referring to documents listed on Scheithauer I Ex. O, which includes all documents on Wolff Errata Ex. 5).

    3.    The Court believes it appropriate to conduct an *in camera* review of a sampling of documents as to which plaintiffs assert, and defendants dispute, fall within the fiduciary exception. As the fiduciary exception is in issue in both of Plaintiffs' Motions, the parties have the option of designating the three remaining documents in issue in Plaintiffs' First Motion as part of the sample to be reviewed *in camera* in accordance with the protocol set forth below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

    **B.**    **Plaintiffs' Second Motion**

    Plaintiffs' Second Motion, as narrowed by subsequent submissions, argues with respect to documents listed on the versions of the First, Second, Third, and Fourth Privilege Logs which constitute Wolff Errata Exs.1-4 that (1) defendants have failed to make a threshold showing sufficient to demonstrate that such documents are privileged because such documents were transmitted to a non-essential third party; (2) defendants have failed to make a threshold showing sufficient to demonstrate that such documents are subject to protection under the work product doctrine; (3) defendants' descriptions of the documents are too vague to establish a privilege; and (4) even if privileged, the documents fall within the fiduciary exception. (Wolff Supp. Decl.; Wolff Errata Exs. 1-4). As discussed below, Plaintiffs' Second Motion is granted in part and denied in part. As also discussed below, the Court believes it appropriate to conduct an *in camera* review of documents assertedly subject to the fiduciary exception.

    1.    The Court first addresses plaintiffs' contention that defendants have failed to make a threshold showing sufficient to demonstrate that certain documents are privileged because such documents were transmitted to a non-essential third party. Plaintiffs make such assertion relative to four documents on Third Privilege Log (Document Nos. 9, 34, 35, 36) and seven documents on the Fourth Privilege Log (Document Nos. 100, 296, 297, 340, 341, 342, 344). (Wolff Errata Exs. 3, 4). The entries in issue on the Third and Fourth Privilege logs list multiple participants in the specified communications. Aside from the individuals expressly designated as counsel and Dennis Wootan, defendants have supplied the Court with no evidence from which to assess whether the remaining individuals listed constitute non-essential third parties with respect to the communications in issue.[6] As defendants bear the burden of establishing such fact and have not done so, Plaintiffs' Second Motion is granted to the extent it seeks to compel the production of the eleven documents in issue. Defendants are ordered to produce such documents within fourteen days.

    2.    The Court next addresses whether defendants have made a threshold showing sufficient to demonstrate that documents in issue are subject to the attorney work product protection. The Court notes from defendants' updated versions of defendants' First, Second, Third and Fourth Privilege Logs regarding the documents in issue (Scheithauser Supp. I Exs. A-D) that defendants currently assert attorney work product protection as to only three documents – Document No. 40 on the Third Privilege Log and Documents Nos. 10 and 213 on the Third Privilege Log.[7] Based upon a review of such entries, the Court concludes that defendants have not made a threshold showing sufficient to demonstrate that the three documents in issue were prepared in anticipation of litigation or for trial. Accordingly, defendants' attorney work product objections to the production of such documents are overruled. However, despite such ruling, the Court does not order production of such documents, at least at this juncture, because such documents are also the subject of attorney-client privilege objections.

---

    [6]There is evidence in the record that one of the listed individuals in issue, Jeff Krynski, was employed by an outside consultant to at least one of the ERISA Plans in Issue. (Wolff II Decl. ¶ 19).

    [7]Although plaintiffs' updated versions of such logs indicate that defendants assert work product protection as to numerous additional documents, the Court presumes that defendants have withdrawn such objections except as to the three above-referenced documents on defendants' version of the logs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

      3.      The Court next addresses plaintiffs' contention that defendants' descriptions of the documents are too vague to establish a privilege. Plaintiffs appear to contend that the descriptions provided for numerous items are insufficient to enable plaintiffs to assess whether the documents fall within the fiduciary exception. The Court believes it appropriate to conduct an *in camera* review of a sampling of such documents. The protocol for such sampling and review is described below.

      4.      The Court believes it appropriate to conduct an *in camera* review of a sampling of documents as to which plaintiffs assert, and defendants dispute, fall within the fiduciary exception. The protocol for such sampling and review is described below.

      **C.**      ***In Camera* Review Protocol**

      In the Joint Status Report, the parties indicate that they have agreed to an *in camera* review/sampling protocol which this Court essentially adopts, with some modifications, as indicated below.

      1.      The Court designates the following categories of documents/communications for *in camera* review:

      a)      Documents/Communications Regarding the Structure/Design/ Amendment/Termination of the ERISA Plans in Issue;

      b)      Documents/Communications Regarding Ongoing Monitoring/Review of Investment Options for the ERISA Plans in Issue;

      c)      Documents/Communications Regarding the Selection/Retention/Use of Third Party Vendors, Including Investment Managers for the ERISA Plans in Issue;

      d)      Documents/Communications Regarding Budgets/Costs/Allocation of Expenses of the ERISA Plans in Issue;

      e)      Communications/Drafts of Communications to Participants of the ERISA Plans in Issue;

      f)      Documents/Communications Regarding Company/Trustee/Fiduciary Liability;

      g)      Documents/Communications Regarding Inquiries/Complaints/Claims from Specific Participant to the ERISA Plans in Issue;

      h)      Documents/Communications As to Which the Logs are Assertedly Vague; and

      i)      Documents/Communications Which Defendants Assert are Non-Responsive, Not Relevant and/or Relate to Plans Other than the Plans in Issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6213 MMM(JCx) | Date | June 29, 2010 |
|---|---|---|---|
| Title | In Re Northrop Grumman Corporation ERISA Litigation | | |

The Court recognizes that some of the categories do not correspond to defendants' asserted reason(s) for not producing documents. To the extent that is the case, defendants may, concurrently with the filing of the joint list discussed below, explain why document(s) that fall or are claimed to fall within such a category, are being withheld or should not be produced in at least a redacted form. Moreover, to the extent it is a party's position that there are no withheld documents in issue which fall within a given category, such party may either refrain from selecting documents in such category or may qualify their submission by indicating that they are selecting documents which the opposing party views to fall within such category to enable the Court to have a sufficient sample to assess such assertion.

2.  Each party may choose no more than three (3) documents in each category for submission to the Court for *in camera* review.

3.  By no later than July 9, 2010, the parties are to file a joint list of all documents to be submitted for *in camera* review. Such list should be organized by category and should reflect at least the log from which the document is drawn and other identifying information (*e.g.*, date, document number, bates number). To the extent documents reflected on the joint list have already been produced in a redacted form, such that the Court's review should be focused on the redacted portions, this fact should be reflected on the joint list.

4.  By no later than July 12, 2010, defendants shall file a Notice of *In Camera* Lodging and shall deliver an original and one copy of documents on the joint list to the Court's chambers. To the extent documents reflected on the joint list have already been produced in a redacted form, defendants should supply the Court with both redacted and unredacted versions of such documents. Defendants are also directed to file, by the same date, a declaration identifying the role of each of the participants in the communications included on the joint list.

5.  After the Court conducts its *in camera* review, the Court will issue a further order as to whether defendants are required to produce additional documents to plaintiffs.

IT IS SO ORDERED

Initials of Deputy Clerk:  kc