UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | CASE NO:  CV 06-6213-MMM(JCx) |
| | ) | |
| IN RE: | ) | CIVIL |
| | ) | |
| NORTHROP GRUMMAN CORPORATION | ) | Los Angeles, California |
| ERISA LITIGATION | ) | |
| | ) | Tuesday, June 29, 2010 |
| _____ | ) | (9:22 a.m. to 10:05 a.m.) |

HEARING ON PLAINTIFFS' MOTIONS (DOCKET NOS. 194, 218)

BEFORE THE HONORABLE JACQUELINE CHOOLJIAN,
UNITED STATES MAGISTRATE JUDGE

Appearances:              See Next Page

Court Reporter:           Recorded; CourtSmart

Deputy Clerk:             Kimberly I. Carter

Transcribed by:           Exceptional Reporting Services, Inc.
                          14493 S. Padre Island Drive
                          Suite A-400
                          Corpus Christi, TX 78418
                          361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>


Plaintiffs:                    NELSON G. WOLFF, ESQ.
                               MARK G. BOYKO, ESQ.
                               Schlichter Bogard & Denton
                               100 South 4th Street, Suite 900
                               St. Louis, MO 63102

Defendants:                    CHRISTOPHER C. SCHEITHAUER, ESQ.
                               NANCY G. ROSS, ESQ.
                               McDermott Will & Emery
                               18191 Von Karman Avenue, Suite 500
                               Irvine, CA 92612

                               TYLER J. WOODS, ESQ.

1    <u>**Los Angeles, California; Tuesday, June 29, 2010; 9:22 a.m.**</u>

2                        **(Call to Order)**

3            **THE CLERK:**  Jacqueline Chooljian, United States

4    Magistrate Judge presiding.  Please be seated.  Case Number

5    CV 06-6213, *In Re: Northrop Grumman Corporation.*  Counsel,

6    would you please state your appearances?

7            **MR. WOLFF:**  Good morning, your Honor, Nelson Wolff

8    and Mark Boyko on behalf of the Plaintiffs.

9            **THE COURT:**  Good morning.

10           **MR. SCHEITHAUER:**  Your Honor, Chris Scheithauer and

11   Nancy Ross on behalf of the Defendants.

12           **THE COURT:**  All right.  And you have some other folks

13   with you as well?

14           **MR. WOODS:**  Tyler Woods and the client Bill Black.

15           **THE COURT:**  All right.  Good morning to you all.

16   Pending before the Court today are two motions both from

17   Plaintiff, Plaintiff's Motion to Compel Production of Documents

18   and Plaintiff's Motion to Compel Production of Improperly

19   Withheld Documents.  The Court issued a tentative ruling

20   yesterday and had that sent to the parties as an order

21   notifying the tentative ruling.  Let me just confirm that both

22   sides have received that.  Plaintiffs?

23           **MR. WOLFF:**  Yes.

24           **THE COURT:**  Defendants?

25           **MR. SCHEITHAUER:**  Yes.

1          **THE COURT:**  All right.  That's really my tentative

2    ruling on it.  So let me inquire whether the parties wish to be

3    heard on that.  I'll start with Plaintiffs, your motions.

4          **MR. WOLFF:**  Thank you, your Honor.  I had a couple of

5    questions or requesting some clarification --

6          **THE COURT:**  All right.

7          **MR. WOLFF:**  -- on the order and by the way, we all

8    appeared yesterday in front of the District Judge Morrow who

9    also issued a preliminary order and I wasn't sure if your Honor

10   had a chance to look through that.

11         **THE COURT:**  You know, I did not see the order.  I did

12   check the Docket and it appeared to me that the matter had been

13   taken submission and I didn't see any tentatives on any

14   Dockets.  So no, I have not seen that.  So if I need to know

15   about that, you should let me know about it.

16         **MR. WOLFF:**  Okay.  Well, just in fairness and by way

17   of background, Judge Morrow in her preliminary order had

18   granted Plaintiff's leave to file their Second Amended Joint

19   Complaint on behalf of all Plaintiffs and within that complaint

20   significantly the scope of the claims with respect to

21   imprudence, breach of fiduciary duty and prohibited

22   transactions against the Defendants was granted and specified

23   to include a number of specific investment funds that are in

24   the 401(k) plans as well as targeted claims against --

25   involving specific investment managers.

1          So the Defendants had objected to that and claimed

2    that that would open the scope of discovery to some other

3    issues.  We don't think it necessarily does.  We believe that

4    those claims had been included within the general complaint to

5    begin with and that this was just making it more specific to

6    conform to what we had uncovered during the course of

7    discovery.

8               THE COURT:  All right.

9               MR. WOLFF:  There was one outstanding issue where the

10   District Judge had tentatively ruled against adding the

11   corporation Northrop Grumman back in as a named Defendant but

12   that is not a final ruling.  We urged her to reconsider that

13   but as far as any discovery matters that are before you today

14   and that are addressed in your preliminary order, I don't think

15   that that has any bearing on it whatsoever.

16              THE COURT:  Do you think -- well, first of all, are

17   you telling me that she did issue a final ruling granting leave

18   to file the Second Amended Complaint and that she just took

19   under submission this issue about the corporation being a

20   Defendant?

21              MR. WOLFF:  Just to be clear, she issued a

22   preliminary order much like yours which granted --

23              THE COURT:  I see.

24              MR. WOLFF:  -- us leave to file the amended complaint

25   and which denied our request to add back in Northrop Grumman

1   Corporation.  So in that sense, they are preliminary rulings

2   and I'm not sure when we're going to get a final ruling but

3   that's what the preliminary ruling was.

4           **THE COURT:**  All right, fair enough.  I haven't looked

5   at it recently but I do recall that I looked at the proposed

6   Second Amended Complaint in conjunction with another discovery

7   motion.  So I think I understand the scope issues that you're

8   talking about.

9           I guess my other question is, was there any

10  discussion with the District Judge about any change in the

11  dates for discovery that are now governing the case.

12          **MR. WOLFF:**  Well, I think that the Defendants had

13  suggested that they wanted to do some additional discovery.  We

14  talked about that with the District Judge and we said we

15  weren't sure exactly what they wanted to have in the way of

16  discovery.  We didn't think that they needed to have any

17  additional discovery but I think, you know, in all candor,

18  especially with the matters that are before you and with

19  matters that are coming down the pipeline this week, there

20  are --

21          **THE COURT:**  Before me?

22          **MR. WOLFF:**  Well, yeah, eventually, eventually.  I

23  hate to be the bearer --

24          **THE COURT:**  Well, something to look forward to.

25          **MR. WOLFF:**  Something to keep you busy.  I'm sure

1   you're not in need of that but that is something I wanted to

2   alert you to.  We had filed some discovery requests I believe

3   it was on June 1st and this, kind of, dovetails into one of the

4   earlier rulings that you had made with respect to the scope of

5   our initial discovery requests.  We -- it was our view that

6   those discovery requests included an open-ended time period.

7   In other words, the date of the filing of the original

8   complaint was in 2006.  We believe that there was a duty

9   ongoing for Defendant to supplement that.

10          While we were waiting for your ruling on that as a

11  matter of precaution, we went ahead and issued formally a

12  supplemental set of discovery to ask that that discovery be

13  brought current from 2006 to the present and also that there be

14  a more complete production of pre-filing discovery because that

15  is relevant to the claims that were already before the Court

16  and which are even more relevant to the claims that are before

17  the Court if it accepts, as it indicated, this Second Amended

18  Complaint.  So we filed that discovery.

19          We had some discussions with Defense Counsel about

20  objections that they represented they are going to be filing

21  and I believe that that is due to be filed on Thursday and it

22  might be something in the form of a motion for protective order

23  or objections, something along those lines.  So my

24  understanding based upon those representations is that if the

25  matter is briefed in the ordinary course that that would be

 1   brought before you on those outstanding discovery matters which

 2   you have not yet seen but that would be before you towards the

 3   end of July.

 4          So that raises the issue of the current discovery

 5   deadline of August 27.  We have consulted with Defendants about

 6   scheduling depositions of corporate representatives and

 7   corporate executives who are involved in running this plan and

 8   understandably I think you'll accept that we wanted to wait

 9   until we got full paper discovery before we started taking

10   those so we didn't have to go back and do them again.

11          **THE COURT:**  Let me -- I don't want to cut you off but

12   I don't decide whether the discovery cutoff gets extended.

13   That's up to the District Judge.  I really -- it was more idle

14   curiosity, I suppose, in terms of what the future might hold

15   for me relative to this case that caused me to ask the question

16   about the discovery deadline but I would like to focus on the

17   motions that are actually on calendar now if you think you've

18   given me sufficient background in terms of the context that

19   would govern whatever the Court might rule on these matters.

20          **MR. WOLFF:**  I think so --

21          **THE COURT:**  All right.

22          **MR. WOLFF:**  -- and I think some of the background

23   will be relevant to some of the questions that I still have.

24          **THE COURT:**  All right.

25          **MR. WOLFF:**  Number one is your Honor identifies in

1   her in-camera review protocol on Page 14 a number of

2   categories.  I believe it's eight categories of documents

3   which, by in large, mirror what I think the parties requested

4   and we don't have any issue with that.  We're going to be able

5   to identify representative documents for your review as you've

6   requested and I think the deadline for that is sometime in a

7   week or so and then the Defendants will provide those to you

8   shortly thereafter and you'll have an opportunity to review

9   those.

10          So one question I had from a procedural standpoint is

11  once you review those and you make a decision on those three or

12  six items within each category, how are you going to address

13  the remaining documents that are within that category?  Are you

14  just going to make a ruling for the rest of them or how is that

15  going to happen?

16          **THE COURT:**  Well, that was my intention but if you

17  have some other method of proceeding that you would propose,

18  you can proffer that.

19          **MR. WOLFF:**  I think that's fine.  I just wanted

20  clarification because I think that's the way that you addressed

21  these other documents which were redacted for relevance and the

22  additional materials that you addressed in this order.  So

23  we're fine by that.  I just wanted to make sure that that's

24  what your plan was.

25          **THE COURT:**  That seems to me to be the purpose of

1  sampling.  So --

2      MR. WOLFF:  Otherwise you're going to review all the

3  documents and that didn't make sense.

4      THE COURT:  I'd rather not do that.  So, yes, that's

5  the purpose of the sampling.  If for some reason the parties,

6  you know, advise me that the sampling isn't sufficient for some

7  reason, you know, I'll hear from the other side obviously but

8  right now, that's my intention.

9      MR. WOLFF:  Okay.  Then focusing on the categories

10  for the in-camera review protocol, there is one category that

11  we would ask respectfully that you consider be added on there.

12  There were a number of documents and by my count, it was about

13  40 documents included these various privilege logs whereby

14  Defendants claimed a privilege and then in the category, you'll

15  remember the column, it asked for the basis of the privilege

16  and in about 40 of those, the basis for the claim privilege is

17  relevance or responsiveness and we don't think that that's a

18  basis for attorney-client privilege of course and so we would

19  like to have the opportunity to bring that to you.  This is an

20  objection.  This is a basis for the privilege that was only

21  asserted late.

22      THE COURT:  Well, let me -- my understanding was that

23  the assertion was that the documents were privileged and on top

24  of that, they weren't relevant.  It was not my understanding --

25  and if I'm wrong about this, the parties can enlighten me --

1  that there were any purely -- just documents clawed back purely

2  on the basis of relevance without there also being a privilege

3  issue.  That was my understanding.

4         I did, with that understanding, include in -- I

5  thought I included it.  I thought I included a category -- and

6  maybe I neglected to do so -- related to -- yeah, I think there

7  was one category that I had included in my notes but for some

8  reason neglected to include here and it was a category that

9  combined basically assertions that pertain to nonresponsive,

10  nonrelevant and other plans which to me -- I think the

11  Defendants had put those as separate categories actually.  To

12  me, that was all part of the same thing.

13         So I did have another category and I don't have my

14  other notes up here but it would basically be documents,

15  communications as to which parties assert that they are not

16  responsive, not relevant or pertain solely to other plans and,

17  frankly, that was when my later comments related to the

18  possibility of redaction being appropriate.  That was really

19  the category that doesn't seem to be in the tentative on which

20  I have spoken.  So that was intended to be a category, so my

21  apologies for not having that make it into the tentative.

22         **MR. WOLFF:**  And I think your Honor had ruled on an

23  earlier motion with respect to documents that were redacted for

24  relevance.  You had ordered those to be produced by the

25  Defendant --

1        **THE COURT:**  Right.

2        **MR. WOLFF:**  -- and those are due to be produced, I

3   believe, next week.

4        **THE COURT:**  All right, yeah.  That, to me, is --

5   that's why I'm saying my assumption based on what I read

6   relative to the motions that are currently before me was that

7   it -- they weren't clawed back purely for relevance.  If that's

8   the case, I need to be advised because the protective order did

9   not provide for claw-back purely for relevance.  It provided

10   for claw-backs for attorney-client privilege and work product

11   and then again, I read this as on top of that, they were not

12   responsive or not relevant.  So there was, you know, that

13   additional overlay but --

14        **MR. WOLFF:**  Okay.  And in that regard, the way that

15   the Second Amended Complaint, which has preliminarily been

16   granted to be filed, sheds some light on the relevance of the

17   request regarding other plans because one of the allegations in

18   the Second Amended Complaint is that the selection of

19   investment managers and investment funds in the 401(k) plans at

20   issue in this case, that that selection process was influenced

21   by some benefit that was to inure to the defined benefit or the

22   pension plans or these other plans which Defendants say are

23   unrelated.  So I think that that may inform the Court a little

24   bit more as to the relevance if, in fact, the District Judge

25   grants the leave to file that amended complaint as indicated.

1          **THE COURT:**  Well, I understand your point but,

2     frankly, that also appeared to me to be encompassed within the

3     -- if you'll look at Page 2 when I say what the First Amended

4     Complaint alleges causing the ERISA plans to enter into

5     agreements, et cetera and then to incur fees and expenses --

6     well, actually it's Number 2, I'm sorry -- causing the plans to

7     pay fees and expenses that were unreasonable or not incurred

8     "solely" for the benefit of the plan's participants to the

9     extent there might have been fees that, you know, were paid by

10    the plan that related to other plans and some of this

11    correspondence might bear on that.  That was part of why I

12    included it -- well, intended to include it in the tentative as

13    a category.

14         **MR. WOLFF:**  And I don't want to get too ERISA-

15    technical on you right now because I don't think it's necessary

16    but the new allegation that Judge Morrow tentatively allowed

17    would be a different type of violation of ERISA.  This is more

18    the imprudence violation and the new allegation is for a

19    prohibited transaction that the Defendants were violating their

20    fiduciary duties by engaging in transactions which benefited a

21    party-in-interest.  So it is of a different qualitative nature

22    but --

23         **THE COURT:**  Okay.  Here's what I'm going to just

24    generally say about that.  Unless and until Judge Morrow issues

25    a final ruling relative to the Second Amended Complaint being

1    the operative pleading or not being the operative pleading, my

2    analysis and review is going to be predicated on the First

3    Amended Complaint.

4         **MR. WOLFF:**  Okay.

5         **THE COURT:**  And I think that's how I have to proceed.

6    If something along the way changes or subsequent to the

7    in-camera review there is some different operative pleading,

8    then I don't know that there's anything that would prevent the

9    parties from asking the Court to take another look at whatever

10   the sample is with the new pleading in mind but I don't think I

11   can speculate or make a determination.  I understand that's

12   what she intended with the ruling but judges change their minds

13   all the time.  So I -- until I see a final ruling, that's how

14   I'm going to proceed.  All right?

15        **MR. WOLFF:**  Understood and just so that we're clear

16   from the Plaintiff's perspective, our discovery, we believe it

17   is relevant notwithstanding the Second Amended Complaint that

18   the relationship -- the relevance of these other plans is still

19   an issue because of the relative treatment and the relative

20   fees that were charged to one plan compared to ours.  That's a

21   basis of relevance.  It helps to inform the Court as to what a

22   reasonable fee was.  If you look at what the same fiduciaries

23   were allowing plans to -- different plans to pay for similar

24   services and they're charging our plans fees that are greater

25   than that for the services provided, it's still relevant.  So I

1    don't want my argument to be predicated entirely upon the

2    Second Amended Complaint.

3            **THE COURT:**  All right.  I think I understand what

4    you're saying but one thing your comments bring to mind that

5    has occurred to me as I look at all of your motions, not just

6    the two before me is that I am by no means an ERISA expert and

7    things that are self-evident to you-all are not self-evident to

8    me and so with respect to informing the Court's in-camera

9    review, we can talk about after -- let me finalize whatever the

10   ruling is going to be on it but after we get to that point, I

11   would like to hear from Counsel as to whether they think,

12   loathe as I am to suggest it, that there might be -- it might

13   be appropriate to do some sort of additional briefing to just

14   better inform the Court relative to the things that it should

15   be considering in conducting the in-camera review because as

16   the cases struggle with defining what plan administration is,

17   some of these categories appear to me to be rather gray.  So it

18   might assist the Court.  It might not but we'll get to that at

19   the end then.

20           **MR. WOLFF:**  Okay.  And the final thing that I would

21   ask, your Honor, is that you had declared that there were

22   approximately eleven documents that had been -- had included

23   third-party communication so that there would be a waiver of

24   the privilege.  I don't recall exactly what page it was on but

25   you had ordered the Defendants to produce those within 14 days.

1       **THE COURT:**  Right, that's Paragraph B-1.  That's --

2    more precisely, my ruling was that the Defendant had not met

3    their burden to demonstrate that the third parties listed were

4    not essential personnel.

5       **MR. WOLFF:**  Okay.

6       **THE COURT:**  And so that was my tentative on it.  I

7    suspect they'll address that when they get up and speak but did

8    you have another inquiry on matter?

9       **MR. WOLFF:**  Not substantively.  I was just going to

10   request that in an effort to try to maintain the current

11   discovery deadline as we are crunched trying to get that

12   depositions scheduled and what not to review documents as early

13   as possible, it would be better -- these are eleven documents

14   that the Defendants already have.  Instead of 14 days, we would

15   ask that they be produced within seven days.

16       **THE COURT:**  I'll hear from the Defense on that point

17   and I will just generally say I allow 14 days for pretty much

18   everything because that's the deadline by which you-all have to

19   appeal any decision that I make.  So I try to as a courtesy

20   allow that timeframe.  I have -- it's not an issue or the

21   parties don't anticipate and appeal and it's not a problem,

22   given the discrete number of documents, to shorten that

23   timeframe but that's my view on it as I sit here right now.

24       **MR. WOLFF:**  Understood.  Okay.

25       **THE COURT:**  Okay?

1          **MR. WOLFF:**  Thank you, that's all I have.

2          **THE COURT:**  And otherwise, you submit on the

3     tentative?

4          **MR. WOLFF:**  Yes, we do.

5          **THE COURT:**  Okay.  Defense?

6          **MS. ROSS:**  Your Honor, my colleague Chris Scheithauer

7     is going to speak this morning about the two motions but I did

8     want to say one thing and that is that I was the one that was

9     before Judge Morrow yesterday and I just want to -- and I

10    appreciate the Court's recognition that until there's a final

11    ruling, nothing is final and the First Amended Complaint is

12    what is operative.

13         I do want to say that I think that Plaintiff's

14    Counsel characterization of the definitiveness of the

15    preliminary order is a bit skewed.  There was a significant

16    amount of discussion with the Court about whether or not -- in

17    light of whether or not she should also allow the claims of

18    prohibited transactions and self-dealing and she was very

19    receptive to reconsidering that even if she's inclined to allow

20    the other allegations.  So I just want the Court to understand

21    that.

22         **THE COURT:**  All right.  I generally presume each side

23    describes the events of the hearing in the light most favorable

24    to them and that people may draw different inferences from

25    things the Court may say or do and that's why I reiterate until

1    the Court has made a final ruling, I -- the First Amended

2    Complaint is what I'm looking to.  So we'll leave that

3    discussion at that point.

4            **MS. ROSS:**  Thank you.

5            **THE COURT:**  All right.  Mr. Scheithauer.

6            **MR. SCHEITHAUER:**  Thank you, your Honor.  And I'd

7    like to first of all thank you for the work you've done on

8    this.  I know it's been a lot of work for everybody involved

9    including you.  One thing I'd like to address is generally

10   speaking I think that we're okay with the order.  There are a

11   couple of points I'd like to address.

12           With regard to the in-camera review protocol, we're

13   generally okay with the protocol the Court has set out.  We do

14   have one request and that is that on Item 3 on Page 15, the two

15   deadlines the Court issued there, July 6th and July 7th, we

16   don't believe we can realistically meet.  We're asking for

17   three additional days on the July 6th.  We're asking that it be

18   moved to July 9th.  The main attorney that has been involved in

19   reviewing these documents is ill and currently unable to work

20   on the documents, Bill Boies, and we note that in connection

21   with the joint list that is due on July 6th, the Defendants are

22   required to provide -- or may provide an explanation of certain

23   documents and why they're being withheld and that was noted at

24   Page 14.  Because the person that's been responsible for this

25   review is ill, we're asking for a few more days.

1          So we would ask that that joint list be provided by

2    July 9th and then Item 4, I guess we could just move to that

3    Monday which is -- instead of July 7th which I believe is a

4    Friday, whatever that Monday is.

5          **THE COURT:**  July 12th.

6          **MR. SCHEITHAUER:**  July 12th.

7          **THE COURT:**  Okay.

8          **MR. SCHEITHAUER:**  So that's our request on that.  One

9    of the issues I'd like to address is the comments that

10   Plaintiff's Counsel made regarding the other plans and

11   production of material regarding other plans.  I think the

12   Court identified it correctly in that all of the documents on

13   these various logs are privileged to begin with.  So they're

14   all governed by the attorney-client privilege.

15         **THE COURT:**  Well, I didn't say that but --

16         **MR. SCHEITHAUER:**  Okay.  Defendant's position --

17         **THE COURT:**  All right.

18         **MR. SCHEITHAUER:**  -- is that all the documents fall

19   within the attorney-client privilege either --

20         **THE COURT:**  Or work product.

21         **MR. SCHEITHAUER:**  -- or work product.  So the issue,

22   the main issue we believe the Court is looking at is whether

23   the fiduciary exception applies.  Now, it's out position that

24   the fiduciary exception does not apply to other plans because

25   the Plaintiffs are participants in the two plans at issue.  To

1    the extent they're trying to get documents relating to other

2    plans, the advice would not be for them.   Therefore, the

3    fiduciary exception cannot be invoked by them in this case.

4         So in that case, there could not be a fiduciary

5    exception and there's no evidence submitted by Plaintiffs that

6    they were participants in these other plans.   Northrop sponsors

7    dozens of various plans both for the main corporation and

8    various subsidiaries and various companies have been acquired.

9    The employees at issue in this case were former employees of

10   Litton Industries which was acquired.   So they're part of the

11   FSSP plan which was the former Litton plan and now is sponsored

12   by Northrop as well as certain other employees that are

13   participants in the main Northrop plan but there's no evidence

14   that they're a plan in the dozens of other benefits plans and,

15   therefore, the fiduciary exception cannot apply to those.

16        So when the Defendants noted that they weren't

17   relevant or other plans or not responsive, the Court got it

18   right that that was sort of a global identification noting that

19   they deal with maybe, you know, some other, you know, plan

20   that's sponsored by one of the subsidiaries or things like

21   that.

22        **THE COURT:**  Let me just inquire.  I indicated what my

23   understanding was with respect to the basis for the claw-back.

24   Let me just confirm with you.  Did you claw back any documents

25   solely based on relevance, nonresponsiveness?

1         **MR. SCHEITHAUER:**  No.  We only clawed back documents

2    that were either communications, you know, attorney-client

3    privileged or that we thought were work product.

4         **THE COURT:**  And same question with respect to any

5    document that appears on the distilled versions of the law.

6    Anything there withheld solely based on relevance without some

7    sort of attorney-client privilege or work product?

8         **MR. SCHEITHAUER:**  Okay.  Defendant's position is all

9    the documents on the logs before the Court are -- would be

10   considered privileged but for the fiduciary exception.  Now,

11   some of them relate to other plans.  What happened here is that

12   when we conducted the collection process, a lot of it was done

13   electronically.  So if things were gathered from, you know,

14   persons and laptops and computers and put into a big database,

15   some of that was produced just running search terms.  So it

16   captured a lot of material that, A, was never asked for by

17   Plaintiffs, B, relates to other plans but all of it that is on

18   these logs is either attorney-client privileged or work product

19   but for the fiduciary exception.

20         So what it comes down to, does the fiduciary

21   exception apply and have the Plaintiffs demonstrated that the

22   fiduciary exception would apply in this case?

23         **THE COURT:**  Do you want to address a potential

24   redaction issue because while I wasn't inclined on the other

25   motion to allow any kind of redaction based on relevance, here

1    with the privilege overlay, that's one of the reasons I

2    intended to add it in now, adding to the tentative that

3    category about nonresponsiveness other plans because I at least

4    thought it possible that there might be one letter that deals

5    with lots of different plans and there might be paragraphs that

6    pertain solely to the plans that are in issue.

7              **MR. SCHEITHAUER:**  Absolutely.  In fact, we have done

8    that.  If the Court looks at the logs, on the log that we

9    provided that identified items that we agreed were on the

10   fiduciary exception that we've already produced, that log notes

11   that some were being produced redacted.  So they appear on both

12   logs.  They appear on the produced form where we identified the

13   pages or whatever that were being produced.  They should also

14   appear on the do-not-produce logs because there's portions that

15   were redacted and so we took that approach.

16             **THE COURT:**  Okay.  Let me just indicate.  If either

17   side chooses to designate for sampling a document that has been

18   produced otherwise in some redacted form and they're -- they

19   want me to look at it for the unredacted version, you need to

20   be sure to give me the versions that are redacted versus

21   nonredacted so I know what I'm looking at it for.

22             **MR. SCHEITHAUER:**  Right, okay, understood.

23             **THE COURT:**  Okay.  Go ahead.

24             **MR. SCHEITHAUER:**  Okay.  So unless the Court has

25   questions on the redaction or the do-not-produce for other plan

1   issues, the other questions that I wanted to raise deal with

2   the ruling -- the tentative ruling on Plaintiff's second

3   motion, Item 1 and these are the items where the Court

4   tentatively is determining that the Defendants have not

5   supplied the Court with evidence that the individuals

6   constitute, you know, nonessential third parties with respect

7   to the communications at issue.

8          Now, I would direct the Court to my declaration,

9   Document -- Docket Number 221 and it is true that we did not

10  identify each individual person in a list.

11         **THE COURT:**  I'm sorry.  Let me -- because --

12         **MR. SCHEITHAUER:**  Sure.

13         **THE COURT:**  -- 221 doesn't get it to me quickly,

14  which motion?

15         **MR. SCHEITHAUER:**  Second motion.

16         **THE COURT:**  Okay.

17         **MR. SCHEITHAUER:**  So it would -- I think the Court if

18  referring to it as Scheithauer Declaration 2.

19         **THE COURT:**  Okay.  So the declaration that was

20  submitted concurrently with the motion?

21         **MR. SCHEITHAUER:**  Correct.

22         **THE COURT:**  Okay.  Go ahead.

23         **MR. SCHEITHAUER:**  Okay.

24         **THE COURT:**  What paragraph?

25         **MR. SCHEITHAUER:**  So Paragraph 21 on Page 7, it's a

1    wraparound.

2           **THE COURT:**  Right.  That pertains to Logs 1 and 2 and

3    you have a similar assertion with respect to Log 5.  No similar

4    assertion with respect to Logs 3 and 4.  So I don't have --

5           **MR. SCHEITHAUER:**  Right, because those logs were not

6    yet prepared --

7           **THE COURT:**  At the time you did this declaration --

8           **MR. SCHEITHAUER:**  Correct.

9           **THE COURT:**  -- that may be but as we sit here today

10   -- all I'm saying is I have no evidence in the record relative

11   to the people other than as I've indicated with respect to the

12   people who are listed on the third and fourth logs.  So --

13          **MR. SCHEITHAUER:**  Right.  So for example, the Court

14   has identified a number of documents, 296, 297, 340, 341, 342,

15   344.  You know, all the people identified on those documents

16   are either identified as in-house Counsel or the Ivans law

17   firm, which was previously identified, and two other people,

18   Jeff Krinski (phonetic) -- who the Court already notes there's

19   evidence in the record is a consultant and the Plaintiffs have

20   already conceded as hired as consultant -- and the only other

21   name is Richard Underhill who is an employee at Northrop who

22   was involved in this process.  So all of these people are

23   either inside Counsel, outside Counsel.  They are the

24   consultant Jeff Krinski or in the -- with regard to those

25   documents, Richard Underhill who are -- who is an employee of

1    Northrop.

2           THE COURT:  Well, what you're telling me is that --

3    and, you know, I'm not suggesting that the Court shouldn't

4    accept your representations but I think the Court needs to have

5    evidence of things and the time to decide this is now and

6    there's been a lot of briefing already --

7           MR. SCHEITHAUER:  Sure.

8           THE COURT:  -- including requests for supplemental

9    briefing and as I sit here today when people have had

10   opportunities to brief everything and it's time for me to make

11   a ruling, I don't have that evidence.

12          MR. SCHEITHAUER:  I understand.  And maybe what

13   should, you know, assist the Court on that issue is, you know,

14   we're talking about a privilege here.  We're talking about the

15   attorney-client privileges, one of the most sacrosanct things

16   in American jurisprudence, and, you know, where there's a hard

17   question, the law says you always give the benefit of the doubt

18   to giving the privilege and the extent that there is any

19   question here, I would ask the Court allow us to provide that

20   evidence regarding these logs because when you actually look at

21   the documents, there really is no question that these people

22   were, you know -- you know, Jeff Krinski we know is a

23   consultant.  We know --

24          THE COURT:  Well, and there is evidence in the record

25   though not from the Defendants, from the Plaintiff's side that

1    he is employed as an outside consultant to at least one of the

2    ERISA plans in issue.

3            **MR. SCHEITHAUER:**  Correct.

4            **THE COURT:**  That still doesn't -- the mere fact that

5    he's an outside consultant, as --

6            **MR. SCHEITHAUER:**  Right.

7            **THE COURT:**  -- I think some of those cases talk

8    about, doesn't get you there.  So it's not merely his role.

9    It's his role vis-à-vis the communications in issue, right?

10          **MR. SCHEITHAUER:**  Right.  Although the Court

11    recognized with regard to the other documents, the other

12    privileged logs that Jeff Krinski was a consultant and I

13    believe the Court accepted the representation of the

14    declarations that all of these people were involved in

15    essential communications regarding the attorney-client

16    privilege.

17          **THE COURT:**  Relative to the communications on the

18    logs referenced.

19          **MR. SCHEITHAUER:**  Correct.  So the only difference

20    here is we're talking about different documents involving some

21    of the same types of communications.  The Court has pointed out

22    that with regard to Privilege Logs 3 and 4, those logs were

23    prepared after the initial briefing and they didn't make it

24    into the declaration.  I can represent to the Court that they

25    would have had the exact same paragraph describing those

1    communications as to those documents.

2           If the Court's interested, we also have Bill Black

3    who is, you know, in-house at Northrop and he can identify

4    these people for the Court if you're not satisfied with my

5    representation or we could take the Court's prior suggestion

6    and perhaps have additional briefing on some of these items.

7           **THE COURT:**  I can't say that I didn't expect that you

8    would get up and say precisely what you're saying with respect

9    to this paragraph.  I also, despite the lack of evidence,

10   suspect that you would have probably no problem presenting the

11   Court with the evidence.  What I struggle with is, you know,

12   the thing that I started with.  This is the day to decide it.

13   It's not here in an evidentiary form today and I know you can

14   have your client stand up and say the same thing.  So -- well,

15   I think you understand what it is I'm struggling with.  So --

16          **MR. SCHEITHAUER:**  I do and if it -- if we weren't

17   talking about the attorney-client privilege and potential

18   waiver of that privilege by, you know, producing documents or,

19   you know, things that people wrote that they expected would be

20   protected by the attorney-client privilege, I obviously

21   wouldn't be making this argument but this is one of the most,

22   you know, critical things that we could be talking about.  So

23   you know, that's my suggestion.

24          **THE COURT:**  So I take it you would oppose Plaintiff's

25   request to expedite the production of those documents as well?

1          MR. SCHEITHAUER:  We would.

2          THE COURT:  All right.  You can -- I'll allow Defense

3    Counsel to be heard on that point but why don't you finish up

4    with the rest of your argument first?

5          MR. SCHEITHAUER:  No, other than that, your Honor, I

6    think that we understand the tentative and we accept it.

7          THE COURT:  All right.  And with the modification

8    that I indicated when I was dealing with Defense -- I'm sorry

9    -- Plaintiff's Counsel that there would also be a category that

10   would loosely describe though not in perfect probably

11   phraseology documents, communications that you've asserted are

12   not relevant and not responsive or pertain to other plans and

13   that would also be added as a category?

14         MR. SCHEITHAUER:  Correct.

15         THE COURT:  All right.  All right, thank you.

16         MR. SCHEITHAUER:  Thank you, your Honor.

17         THE COURT:  I'll hear from Plaintiffs?

18         MR. WOLFF:  I'll try to --

19         THE COURT:  Did you want to respond to that last

20   argument, which I'm sure you anticipated as well?

21         MR. WOLFF:  Actually I didn't, your Honor, because

22   all of this briefing that's gone back and forth, this has

23   literally been months and months of effort on our part to try

24   to secure these documents from Defendants in this case.  I

25   mean, this has been briefed to death and as your Honor's

1   pointed out, the train has left the station.  The time to get

2   on board has already passed.  To propose new testimony, new

3   evidence at this point in time would only delay things further

4   especially when we're up against this deadline.  So if it was

5   that important, if this so-called privileged document was so

6   sacrosanct, they had the information available to them.  They

7   could have filed all of that evidence and we could have had an

8   appropriate time and venue to respond to that.  So I would

9   categorically oppose that request at this point in time.

10          As far as the earlier stuff on extension of time of a

11   few days because apparently there's only one person at this

12   large corporation who can respond to all of these requests and

13   that person is sick if it's a couple of days, you know, at this

14   point in time notwithstanding the additional burden it puts on

15   us time-wise, we don't have a problem with that if your Honor

16   is inclined to do that.  We're happy to provide any additional

17   briefing you would like with regard to plan administration

18   definitions although I think we -- both sides have provided

19   evidence and explanation of that.  We can do more if you'd like

20   and we can do it at the same time.

21          **THE COURT:**  Well, I don't need to make you do more if

22   you think what I have is sufficient but I just -- as I said,

23   don't assume that the Court has expertise in the ERISA field.

24   I'm going based on what you're all telling me.  So I actually

25   did have one question I'm reminded of and that -- perhaps I

1    shouldn't even raise the issue but I was curious about it and

2    it informed, I guess, my thinking on the fee issue whether

3    something's intended for the benefit.  It seemed to me -- or at

4    least it was my understanding that the ERISA plan was probably

5    obligated to pay for the settler functions as well as for the

6    fiduciary functions.  Is that correct?

7              **MR. WOLFF:**  I believe that's correct.

8              **THE COURT:**  Okay.  Then that is part of what informed

9    my decision with respect to not getting into the whole who paid

10   the bill in assessing whether or not something was for the

11   benefit of the plan or not benefit of the plan because it

12   didn't seem to me to move the analysis forward in light of that

13   assumption that I made that you've confirmed is correct.

14             **MR. WOLFF:**  Yeah, that seems prudent but with regard

15   to these documents which only recently in our mind have

16   Defendants asserted a basis for withholding on the part of

17   responsiveness, I understand now although it was not clear from

18   the logs that that is a secondary issue, that the primary

19   reason for their withholding these numerous documents is on the

20   basis of a purported privilege.  Then I don't even see how the

21   responsiveness or relevance issue comes into play at all and we

22   certainly haven't been given the opportunity to address that

23   given the belated nature -- or the belated timing of their

24   raising that.  So I just want to be clear now that we have that

25   clarification from Defendants.  Is the attorney-client

1   privilege going to be the only basis for the Court's assessment

2   as to whether or not these documents should have been produced?

3         **THE COURT:**  The only thing I've reviewing these

4   documents for is the fiduciary exception.  Again, I -- and that

5   is frankly why I separated into two categories the law relative

6   to in-camera review in general or whether something is

7   privileged attorney work product and the law which appears --

8   you know, which is -- seems to be a little bit more liberal or

9   at least does apply in the context of fiduciary exception.  So

10  I've made the determinations on privilege and attorney work

11  product.  At this point I'm not doing any in-camera review for

12  that purpose except for fiduciary exception, to clarify if that

13  was an open question.

14        **MR. WOLFF:**  Well, it does in a way and then I wonder

15  then stepping back you've created this new category at my

16  request or my suggestion in reviewing documents that had been

17  identified as being withheld subject to relevance or

18  responsiveness.

19        **THE COURT:**  And other plans.

20        **MR. WOLFF:**  Okay.

21        **THE COURT:**  I'm not reviewing for relevance or

22  responsiveness or whether they pertained other plans.  What I'm

23  reviewing for there is whether to the extent those documents

24  haven't really been produced in a redacted form and I think I

25  misspoke and I did, kind of, go astray in the comments I made

1   and I think that's why Defense Counsel stood up and said what

2   he did relative to the fiduciary exception and I think he's

3   right on that point.

4          So to the extent I suggested otherwise, I should

5   clarify.  I'm reviewing solely for fiduciary exception on those

6   nonresponsiveness other plan.  I'm looking for that to see if

7   it's mingled in such a way or separable in such a way that they

8   have not already done so that it can be produced in some sort

9   of redacted form.  All right.

10          **MR. WOLFF:**  Okay.  And we understand that.  If your

11   Honor has nothing else, we don't have anything as well.

12          **THE COURT:**  All right.  Other than -- okay.  First,

13   let me do the easy one.  I am going to add that one category to

14   the categories of in-camera review and the Court's final order

15   will reflect that.  I will extend the deadline as requested by

16   Defense Counsel so that Paragraph 3 of the protocol, which

17   currently has a deadline of July 6 will be changed to July 9

18   and that the Paragraph 4 deadline of July 7 will be changed to

19   July 12.

20          I am -- though I understand Counsel's argument, I'm

21   not inclined to change the tentative with respect to Paragraph

22   B-1 and, of course, Defendants -- I'm going to leave the 14-day

23   deadline intact and Defendants can, of course, appeal that

24   determination.  Other than that, the Court adopts the tentative

25   and that will be the Court's ruling on the motion.  Let me -- I

1    -- let me -- I think Plaintiffs weighed in already.  Let me

2    just hear from Defendants relative to whether you think there's

3    anything else that would be of assistance to the Court in

4    conducting the in-camera review that the parties could provide.

5            **MR. SCHEITHAUER:**  I assume you mean other than what

6    you've identified at the bottom of Page 14 of the tentative?

7            **THE COURT:**  Yes.  I think to some degree Defendants

8    have already done that in the current logs --

9            **MR. SCHEITHAUER:**  Okay.

10           **THE COURT:**  -- but I just thought it would be helpful

11   because I'm flipping between multiple different versions of

12   documents and so to the extent it can -- everything I need to

13   do for in-camera review can be in one place.  That's, kind of,

14   why I gave you the option of explaining that.

15           **MR. SCHEITHAUER:**  Okay.  And we would do --

16           **THE COURT:**  I don't know that you need to do more

17   than you already did in the log but I just, as I said, want

18   everything I need in one spot for doing the in-camera review

19   and then the list -- really the list of the third parties is

20   because, again, I don't know who these people are in the

21   abstract.  So -- and if you don't know what I'm talking,

22   Paragraph 4, I also included a requirement that Defendants file

23   something telling me who everybody is --

24           **MR. SCHEITHAUER:**  Okay.

25           **THE COURT:**  -- on these documents.  Aside from those

1   things, is there anything else the Defendants think go on the

2   review of the documentation?

3           **MR. SCHEITHAUER:**  I think that will be sufficient

4   from Defendants.

5           **THE COURT:**  Okay.  All right.  Then I will not have

6   the parties submit any additional briefing.  The ruling will go

7   out in a nontentative form today then along the lines we've

8   talked about.  Anything else at this time?

9           **MR. WOLFF:**  Nothing, your Honor.  Thank you for your

10  time.

11          **MR. SCHEITHAUER:**  Nothing, your Honor.  Thank you.

12          **THE COURT:**  All right.

13          **THE CLERK:**  This court is now adjourned.

14      **(This proceeding was adjourned at 10:05 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATION**


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____                    ___July 9, 2010__


                    TONI HUDSON, TRANSCRIBER