JEROME J. SCHLICHTER (SBN 054513)
jschlichter@uselaws.com
NELSON G. WOLFF (admitted *pro hac vice*)
nwolff@uselaws.com
JASON P. KELLY (admitted *pro hac vice*)
jkelly@uselaws.com
MARK G. BOYKO (admitted *pro hac vice*)
mboyko@uselaws.com
SCHLICHTER, BOGARD & DENTON
100 South Fourth Street, Suite 900
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-7151

*Interim Lead Counsel for All Plaintiffs*

(Additional Counsel Listed on Signature Page)

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NORTHROP GRUMMAN CORPORATION ERISA LITIGATION. | CASE NO. CV 06-06213-MMM (JCx) |
| THIS DOCUMENT RELATES TO: | **PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY** |
| All Actions | **CLASS ACTION** |

CV 06-06213 MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

## REVISED CONSOLIDATED SECOND AMENDED COMPLAINT
## FOR BREACH OF FIDUCIARY DUTY

### INTRODUCTION

1.      On March 26, 2007, the cases of *Grabek, et al. v. Northrop Grumman Corporation* (06-CV-6213) and *Heidecker, et al. v. Northrop Grumman Corporation* (07-CV-0153), were consolidated into the currently captioned as *In re Northrop Grumman Corporation ERISA Litigation.* Pursuant to the Plaintiffs' Joint Stipulation for Appointment of Interim Lead Counsel and the Plaintiffs' efforts to streamline the litigation, the *Grabek* Plaintiffs and *Heidecker* Plaintiffs hereby jointly submit this Consolidated Second Amended Complaint for Breach of Fiduciary Duty.

2.      Pursuant to the Employee Retirement Income Security Act (ERISA) § 502(a), 29 U.S.C. § 1132(a), Plaintiffs Gary Grabek, Mark A. Geuder, Dwite Russell, Julie Spicer, Andrew Heidecker and Richard Black, on their own behalf and as Representatives on behalf of all similarly situated participants and beneficiaries of the Northrop Grumman Savings Plan, Plan 011, ("NGS Plan"), and the Northrop Grumman Financial Security and Savings Program, Plan 010, ("FSS Plan") (collectively referred to as the "Plans"), seek to recover the losses suffered by the Plans on a plan-wide basis and to obtain injunctive and other equitable relief for the Plans from the Defendants based upon their breaches of their fiduciary duties.

### PARTIES, JURISDICTION AND VENUE
### Plaintiffs

3.      Plaintiff / Putative Class Representative Gary Grabek resides in Schaumburg, Illinois, within the Northern District of Illinois.

4.      Plaintiff / Putative Class Representative Mark A. Geuder resides in Woodstock, Illinois, within the Northern District of Illinois.

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

5.      Plaintiff / Putative Class Representative Andrew Heidecker resides in Peoria, Arizona.

6.      Plaintiff / Putative Class Representative Richard Black resides in West Babylon, New York.

7.      Plaintiffs / Putative Class Representatives Grabek, Geuder, Heidecker and Black are participants in the NGS Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

8.      Plaintiff / Putative Class Representative Dwite Russell resides in Springfield, Missouri.

9.      Plaintiff / Putative Class Representative Julie Spicer resides in Springfield, Missouri.

10.     Plaintiffs / Putative Class Representatives Russell and Spicer are participants in the FSS Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

## **Northrop Grumman Corporation**

11.     Northrop Grumman Corporation ("Northrop") is the sponsor and an administrator of the Plans, within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).  Northrop is also the employer and principal of the Plans' other administrators.  In particular, the Northrop Grumman Investments and Trust Administration Department [f/k/a the Investment Trust Management Department] ("ITA") is composed of Northrop employees and has been delegated, among other duties, authority to select investment managers for the Plans, recommend and implement investment policies and investment fund objectives, and monitor the conduct of investment performances, the investment managers and others connected with the investment of the Plans' assets.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

12. During the entire relevant time period, and as expressly stated in the NGS Plan's 2001 IPS, the Northrop ITA was tasked with the responsibility to "recommend and implement investment policies and investment fund objectives… establish review procedures designed to assure compliance with ERISA… Develop investment manager guidelines and benchmarks; select, appoint, terminate and enter into agreements with investment managers, investment consultants, banks or insurance companies;… monitor investment performance" and perform various other fiduciary tasks.

13. Further, as expressly stated in the 2004 Investment Policy Statement for the Plans, the Northrop ITA had a fiduciary duty to monitor the Plan investment options and Northrop directly had an obligation to make disclosures related to fees and expenses of the Plans and investment options.

14. Additionally, the Company's management controls the purse strings of the Plans' expenditures.

## Defendants

15. Defendant Northrop Grumman Corporation Savings Plan Administrative Committee ("Administrative Committee"), whose members are Northrop executives and officers, is a "named fiduciary" (as defined in ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2)) to the NGS Plan and the FSS Plan for all purposes other than investment matters. Because the Administrative Committee enters into contracts on behalf of the NGS Plan and FSS Plan and authorizes the payment of expenses from the Plans' assets, the Administrative Committee and its members are fiduciaries with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

16. Defendant J. Michael Hateley was Corporate Vice President of Northrop and has been the Chief Human Resources and Administrative Officer of Northrop Grumman. He was a member of the Administrative Committee and a

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

fiduciary with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

17.     Defendant Ian Ziskin was, at the relevant time, the Chair of the Administrative Committee.  He was the Corporate Vice President and the Chief Human Resources and Administrative Officer for Northrop Grumman.  In these positions, he was a fiduciary with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

18.     Defendant Dennis W. Wootan has served as the Secretary of the Administrative Committee and is a fiduciary with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

19.     Defendant Northrop Grumman Corporation Savings Plan Investment Committee ("Investment Committee"), whose members are Northrop employees and officers, selects the investment options available to NGS Plan and FSS Plan participants, hires the investment managers and trustees, gives them their investment directives, oversees their performance, and has the authority to change the investment directives and/or investment managers and trustees in the future. The Investment Committee has the responsibility to periodically review the performance of the investment managers it hires and to report those results to the Board of Directors for review.  The Investment Committee is a "named fiduciary" (as defined in ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2)) with respect to the Plans' investments and is a fiduciary with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

20.     Defendant Ryan Hamlin is Northrop Grumman's Corporate Director, Investments, and a member of the Investment Committee.  In these roles, he is a fiduciary with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

21.     Defendant Rose Mary Abelson was a member of the Investment Committee.  As a member, she was a fiduciary with respect to the NGS Plan and the FSS Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

### Jurisdiction and Venue

22.     Plaintiffs seek relief on behalf of the Plans through the mechanisms found in ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502, 29 U.S.C. § 1132. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

23.     All Defendants are subject to service of process issued from this Court pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(1)(2).

24.     Venue of this action is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  Both of the Plans are administered from Northrop's headquarters in Los Angeles within this district, and because the Defendants may be found here.

### The Plaintiff Class

25.     Plaintiffs Geuder, Grabek, Russell, Spicer, Heidecker and Black bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated participants and beneficiaries.  They seek to represent the following Class ("the Class"):

> All persons, *excluding the Defendants, the Committees and/or other individuals who are or may be liable for the conduct described in this Complaint,* who are or were participants or beneficiaries of the Plans and who were, are, or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of either Plan in the future.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

26. Certification of this class is proper under Rule 23(a) because all prerequisites are satisfied:

    A. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. Although the Plaintiffs do not know the exact number of Class members as of the date of filing, there were 142,841 participants with account balances in the NGS Plan at the end of the 2008 plan year. At the end of the 2008 plan year, there were 21,851 participants with account balances in the FSS Plan.

    B. **Commonality.** Common issues of fact and law predominate over any issues unique to individual class members. Issues that are common to all class members include, but are not limited to, whether the Defendants:

        i. Charged, or caused to be charged by entering into contracts with third parties, fees and expenses to the Plans that were, or are, unreasonable and/or not incurred solely for the benefit of participants and beneficiaries of the Plans;

        ii. Failed to monitor the fees and expenses paid by the Plans and, by such failure, caused or allowed the Plans to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of participants and beneficiaries of the Plans;

        iii. Failed to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plans were reasonable and incurred

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET , STE. 900
ST. LOUIS, MISSOURI 63102

solely for the benefit of the participants and beneficiaries of the Plans;

iv.  Appointed as fiduciaries, including investment managers, persons who did not fulfill their fiduciary duties, failed to monitor and/or oversee the performance of those fiduciaries and to ensure that they were fulfilling those duties, and failed to terminate the fiduciaries' appointment after breaches occurred;

v.  Selected and maintained investment managers based on imprudent criteria that was inconsistent with the best interest of the Plans and benefitted themselves by doing so;

vi.  Organized and paid for administrative services in a manner inconsistent with their fiduciary obligations and the best interests of the Plans and, in so doing, benefitted themselves at the expense of the Plans;

vii.  In charging, paying, causing to be charged or paid, and failing to monitor the fees and expenses of the Plans, failed to exercise the care, skill, prudence, and diligence that a prudent person would when acting in like capacity and familiar with such matters;

viii. By the conduct above and/or by other conduct set forth in this Complaint, revealed in discovery and/or proven at trial, breached their fiduciary and other ERISA-imposed obligations to the Plans, participants and beneficiaries of the Plans, and members of the class;

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

ix.   Are liable to the Plans and the Classes for losses suffered as a result of the breaches of their fiduciary duties and other ERISA-imposed obligations; and

x.   Are responsible to account for the assets and transactions of the Plans and should be charged for any transactions and payments for which they cannot account.

C.   **Typicality.**  The claims brought by the Plaintiffs are typical of those of the absent class members because:

i.   The Defendants owed the exact same fiduciary and other ERISA-based obligations to each participant in the Plans and each member of the Class;

ii.   The Defendants' breach of those obligations constitutes a breach as to each participant and each member of the Class;

iii.   To the extent that there are any differences among class members' damages, such differences would be a product of simple mathematics based upon their account balances in the Plans.

D.   **Adequacy of Representation.**  The Plaintiffs are adequate representatives of the absent class members and will protect such absent class members' interests in this litigation.  The Plaintiffs do not have any interests antagonistic to the other class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the class' claims.  Plaintiffs have retained competent counsel, versed in ERISA, class actions, and complex litigation.

27.   Class certification is appropriate under Rule 23(b) as follows:

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

A. Pursuant to Rule 23(b)(1)(A), in the absence of certification, there is a risk of inconsistent adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants.  Further, pursuant to Rule 23(b)(1)(B), in the absence of certification, there is a risk of adjudications with respect to individual class members that would be dispositive of the interests of persons not part of the class and substantially impair or impede their ability to protect their interests; and

B. Pursuant to Rule 23(b)(2), as set forth above, the Defendants have acted on grounds generally applicable to each class as a whole; and

C. Pursuant to Rule 23(b)(3), questions of law and fact common to the members of the class predominate over individual questions and a class action is a superior method for the fair and efficient adjudication of these claims.

28.	Notice to the members of the Class is not required under Rule 23(b)(1) and (b)(2).  In the event that a class is certified under Rule 23(b)(3), Plaintiffs plan to use the internet and the U.S. Mail to notify members of the Classes.

**The Plans**

29.	Northrop Grumman offers certain of its employees the opportunity to participate in the NGS Plan and the FSS Plan as part of their compensation and benefits.

30.	The NGS Plan and the FSS Plan are "defined contribution plans," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34), of the type popularly known as "401(k) plans."  The Northrop Grumman Defined Contribution Master Trust holds the assets of all of Northrop's retirement plans, including the NGS Plan and the FSS Plan.

CV --06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

31.     Participating employees may defer and direct earnings as contributions to the Plans in an Company Stock Fund and any of the following seven collective trust funds which were created at the direction of the Administrative Committee and/or the Investment Committee and/or the ITA:

A.     U.S. Equity Fund;

B.     U.S. Fixed Income Fund;

C.     Stable Value Fund;

D.     Balanced Fund;

E.     International Equity Fund;

F.     Small Cap Fund; and

G.     Emerging Markets Fund.

32.     During the relevant time period, participating employees were also offered the following three options which have been removed from the Plans:

A.     Equity Index Fund;

B.     High-Yield Bond Fund; and

C.     International Bond Fund.

33.     Both Plans pay fees to the investment managers in these funds.

34.     Both Plans also pay fees for administrative services, such as recordkeeping and trustee services, which are paid by the Plans through charges to each Plan investment option which are additional to the investment management fee.

## Defendants' Fiduciary Duties

35.     Defendants exercise discretion over Plan assets in various ways, including the selection, monitoring and retention of Plan investment options and managers within each Plan investment option, as well as in administrative capacities.

36.     Accordingly, Defendants are fiduciaries to the Plans.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

37.     Defendants are bound by ERISA's imposition of a fiduciary duty that has been characterized as "the highest known to law."  Defendants' fiduciary obligations require that, at all times, they conduct themselves with the utmost good faith, loyalty and fidelity; act with the sole purpose of advancing the interests of the Plans, Plan participants and beneficiaries; scrupulously avoid all self-interest, duplicity and deceit; and fully disclose to, and inform participants and beneficiaries of, all material information.

38.     Defendants' fiduciary obligations under ERISA require that they exercise the care, skill and diligence that a prudent expert would in the operation of a Plan with like character and aims.

39.     Defendants' fiduciary obligations under ERISA require that they discharge their duties with the exclusive purpose of providing benefits to Plan participants and beneficiaries and defraying the reasonable cost of administering the Plans.

40.     Defendants' fiduciary obligations under ERISA require that they ensure, at all times, that Plan assets are *never* used for the benefit of the employer; here, Northrop.

41.     Defendants' fiduciary obligations under ERISA require them to scrupulously avoid any transaction in which Plan assets would be used by, or inure to the benefit of, a party in interest in connection with the Plans, including Northrop.

42.     Defendants' obligations under ERISA also require them to avoid prohibited transactions under ERISA § 406, 29 U.S.C. §1106.

### The Northrop Stock Fund

43.     The Plans offer Northrop employees the opportunity to invest in the Northrop Grumman Stock Fund ("Stock Fund").  That fund is designed to grow the

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

employees' investment over the long term through capital appreciation of Northrop Grumman Corporation common stock.

44.     The Stock Fund involves minimal, if any, investment management because the fund's stated purpose is to invest participant contributions in Northrop Grumman Corporation common stock.

45.     The investment manager retained by Defendants for the Stock Fund was State Street Global Advisors ("State Street"), to which Defendants obligated the Plans to pay for investment management.

46.     During the five-year period preceding spring 2006, the Stock Fund paid an average of $454,588.88 per year in investment management expenses, even though that Fund's singular investment directive is to invest in Northrop Grumman Corporation common stock.  The only stock held by the Stock Fund is Northrop Grumman Corporation common stock.  Little or no investment management decisions were necessary or occurring.

47.     Allowing the Stock Fund to pay approximately $500,000 in investment management expenses annually violated Defendants' fiduciary duties under ERISA to the Plans and violated ERISA's explicit directive that fiduciaries discharge their duties with the exclusive purpose of defraying reasonable expenses incurred in administering the plan.  ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii).

48.     The investment management fees which Defendants obligated the Plans to pay have exceeded the fees for asset management charged by investment managers who manage funds holding company stock funds of comparable companies.

49.     State Street, in addition to serving as an investment manager of the Stock Fund, is also a service provider of several Northrop corporate accounts, including multiple defined benefit pension plans.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

50.     As trustee of the Plans and investment manager to the Stock Fund, State Street was a party in interest as defined by ERISA § 3(14), 29 U.S.C. § 1002(14).

51.     The excessive payments to State Street are and were prohibited transactions under ERISA § 406, 29 U.S.C. §1106.

52.     In addition to these investment management fees, Defendants have obligated the Stock Fund to pay approximately $1 million per year for administrative services.

53.     Defendants knew or should have known of these excessive fees, but failed to remedy them.


## Excessive Investment Management Fees of Other Plan Investment Funds

54.     The investment management fees for the Plans' investment options included fees to investment managers and fees paid to Northrop.

55.     These fees were excessive and unreasonable when compared to the market rate for institutional investment management and in light of the actual asset management services required and provided when compared to known and readily available alternatives.

56.     Industry studies show that the investment management fees, as a percentage of assets, decline as asset size increases.

57.     Each of the following investment options charged excessive investment management fees:

A.      The International Bond Fund charged investment management fees, depending on the year, of as much as 82 basis points (bps) [0.82%].  Industry studies show that the median investment management fee for similarly sized funds is over 50% lower, or 39

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

bps, and any investment management fee greater than 49 bps ranks in the top 10% of most expensive similarly sized funds.

B.      The International Equity Fund charged investment management fees, depending on the year, of as much as 60 bps.  Studies show that even for funds with one-half the size of the International Equity Fund, the median investment management fee is over 33% less expensive, or 39 bps, and any investment management fee greater than 53 bps ranks in the top 10% of most expensive similarly sized funds.

C.      The Small Cap Fund charged investment management fees, depending on the year, of as much as 81 bps.  Studies show that even for funds with less than one-half of the assets of the Small Cap Fund, the median investment management fee is over 35% less expensive, or 52 bps, and any investment management fee greater than 69 bps ranks in the top 10% of most expensive similarly sized funds.

D.      The Emerging Markets Fund charged investment management fees, depending on the year, between 112 and 141 bps.  Studies show that even for funds with less than one-half of the assets of the Emerging Markets Fund, the median investment management fee is over 65% less expensive, or 49 bps, and any investment management fee greater than 88 bps ranks in the top 10% of most expensive similarly sized funds.

58.      Defendants knew or should have known of the high fees associated with these investment options, and further knew or should have known that each of these investment options failed to meet their stated performance objectives and each failed to outperform both their relevant benchmarks and the median return for peer separate accounts.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

59.     Nevertheless, Defendants continued to hire and retain excessively expensive investment managers when less expensive but superior active managers, and far less expensive passive management, were readily available.

60.     As a result of the excessive investment management fees described above, the total amount of fees paid by the investment options listed above have been excessive and unreasonable.

## Excessive Administrative Fees

61.     The administrative expenses of the Plans were paid for by the Plans and collected through asset-based charges to each of the Plans' investment options.

62.     Defendants, as fiduciaries, were responsible for ensuring that these administrative fees were reasonable.

63.     Some of these administrative costs were charges by Northrop and paid by the Plans, purportedly for services provided to the Plans by Northrop employees and agents.

64.     Defendants also owed the Plans a duty of loyalty requiring that the services paid for by the Plans were for the exclusive purpose of providing benefits to participants and their beneficiaries.

65.     Defendants were informed that the administrative fees being charged to the Plan were excessive when compared to the market, yet failed to eliminate these excessive costs.

66.     For example, in April 2002, Defendants were informed by their consultant, Gildner & Associates, that the administrative costs of the Plans exceeded the range of competitive market rates for comparable administrative services for comparable retirement plans.  The Plans' excessive fees were largely due to the high fees paid to Northrop for administrative services it provided, according to this same consultant.

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

67.    In October, 2004, Defendants again consulted with Gildner &
Associates, having still failed to outsource many of their administrative tasks or
reduce their charges.  Again, Gildner informed Defendants that the total
administrative costs of the Plans were excessive when compared to the range of
prices found in the competitive market.

68.    Defendants failed to bring the administrative costs in line with market
rates, and, in fact, administrative costs rose.  For example, administrative fees
charged to the FSS Plan ranged from 12 bps to 14 bps in 2004, but increased to as
high as 113 bps in 2005 and remained excessive.

69.    Only after this civil action was filed did Defendants follow some of
Gildner's recommendations to outsource additional administrative functions, which
did, in fact, reduce some costs.

70.    Northrop and its Committees' own internal policies created a situation
where employees of Northrop were motivated to, and did, charge time and expenses
to the Plans which were either impermissible in nature or excessive and
unnecessary.

71.    Defendants created an incentive to charge the Plans excessive
administrative fees by telling Northrop staff that they would be fired if they stopped
billing the Plans or if they outsourced administrative functions, even though
Defendants knew that outsourcing would reduce Plan administrative expenses and
in the best interests of the Plans' participants and beneficiaries.

72.    This imprudent and self-interested incentive structure prevented
Defendants from assessing whether it would be in the best interests of the Plans to
outsource administrative functions and, accordingly, led directly to the excessive
fees charged by Northrop to the Plans for services that could have been more
effectively outsourced consistent with the practices of prudent fiduciaries in similar
situations.

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET , STE. 900
ST. LOUIS, MISSOURI 63102

CV --06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

73.     By this conduct, in addition to violating ERISA § 404(a); 29 U.S.C. §1104(a), Defendants also engaged in prohibited transactions in violation of ERISA §406(a) and (b).

74.     This incentive structure obligated the Plans to engage in transactions with the Benefits Administration Department, which resulted in payment to Northrop of inflated costs.  Further, it caused Defendants to deal with the assets of the Plan in their own interest and for their own account in violation of ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1) and to violate ERISA § 406(b)(2) and (b)(3), 29 U.S.C. §1106(b)(2) and (b)(3), through these actions.

## Imprudent and Disloyal Selected and Retention of Investment Managers

75.     When selecting and maintaining investment managers for the Plans, Defendants owed fiduciary obligations to make such decisions: (1) for the exclusive purpose of providing benefits to participants and their beneficiaries; (2) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and (3) in accordance with the documents and instruments governing the Plans.

76.     Specifically, Defendants breached these fiduciary obligations with respect to the following investment managers within the following funds:

        A.     US Equity Fund

             i.     Ark Asset Management

             ii.     Dresdner RCM

             iii.     Forstmann-Leff Associates

             iv.     Jennison Associates

             v.     Putnam Investments

        B.     Small Cap Equity Fund

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

i.   John McStay

ii.  Pilgrim Baxter & Associates

iii. Provident Investments

iv. State Street Global Advisors

v.   Capital Guardian

C.   International Equity Fund

    i.   Capital Guardian

    ii.  Sit/Kim Int'l

    iii. T.Rowe Price

    iv. Morgan Stanley

    v.   Alliance Bernstein

    vi. Scudder Kemper

D.   Emerging Markets Fund

    i.   GMO

    ii.  Capital Guardian

E.   Balanced Fund

    i.   Capital Guardian

F.   International Fixed Income Fund

    i.   Blackrock

77.    These investment managers were selected and maintained by Defendants.

78.    Defendants received preferential discounts and services in Defendants' defined benefit and other plans from these investment managers in exchange for Defendants' inclusion of these managers in the 401(k) Plans.

79.    Defendants considered these discounts and services and the suitability and benefits to itself and to other Plans when determining whether to include or continue to include an investment manager in the 401(k) Plans.  Among other

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

things, this consideration was disloyal because it was not done solely in consideration of the Plans' participants.

80. It is imprudent for a fiduciary to consider these factors when evaluating and selecting managers.

81. As a result of this imprudence and disloyalty, Defendants eliminated from consideration managers who could have prudently managed 401(k) Plan assets, including managers with higher expected returns, lower fees, and comparable risk, based solely on the fact that they either were not managers in Northrop's defined benefit (pension) plans or were not suitable to become managers, and provide Northrop a discount for managing, defined benefit plan assets.

82. These managers also charged the Plans excessive and unreasonable fees in relationship to the services provided.

83. Defendants breached their duty of prudence in selecting managers with such excessive and unreasonable fees.

84. In addition to constituting a breach of Defendants' duties of prudence and loyalty, such conduct was inconsistent with the documents governing the Plans.

85. Specifically, the Plan Documents provide that Plan investments must be chosen based solely on their suitability to participants' need to accumulate assets for retirement and according to specific criteria that do not include the investment manager's suitability in the defined benefit plan or other Northrop corporate accounts.

### Violations of the Plan Documents

86. Defendants are bound by a fiduciary duty to administer the Plans in accordance with the Plan documents, ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D); 29 C.F.R. § 2509.94-2 including, but not limited to, the Investment Policy Statements, which require, among other things, that:

- 19 -

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

A.    Defendants select the Plans' investment options solely for their suitability to participants' need to accumulate assets for retirement.

B.    Defendants, through the ITA Department at Northrop Grumman, follow a screening process that embodies the principles of procedural due diligence or, as otherwise stated, follow a due-diligence process so as to make a prudent selection of investment managers.

C.    Defendants' due-diligence process include only consideration of appropriate screening information and ensure an unbiased and objective search process.

D.    With respect to monitoring costs, the ITA Department of Northrop is responsible for determining if the Plans' investment-related costs represent a fair price in relation to the level and quality of services being provided to participants and, to do so, that the ITA Department of Northrop shall rely upon relevant and reliable surveys, databases, and industry benchmarks when assessing the reasonableness of the Plans' investment-related costs, and will report these costs to the Investment Committee.

E.    To fulfill its ongoing fiduciary responsibilities that the ITA Department of Northrop and the Investment Committee will, on a periodic basis, not less than annually, review the actual results achieved by the investment portfolios to verify that each portfolio is being managed in compliance with the investment guidelines, and to evaluate the investment return produced in comparison to the performance objectives stated herein.

87.    Defendants violated their fiduciary duty to administer the Plans in accordance with the Plan documents, including but not limited to the Investment Policy Statement, in that they:

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

A.     Selected managers within Plan investment options based on considerations other than their suitability to participants' need to accumulate assets for retirement.

B.     In including these other considerations, including actual or potential investment management relationships and discounts in the Northrop defined benefit plans and/or other Northrop corporate accounts, the ITA Department at Northrop failed to follow a screening process that embodies the principles of procedural due diligence or, as otherwise stated, failed to follow a due-diligence process so as to make a prudent selection of investment managers.

C.     By screening out managers who may have been superior investment managers for the Plans but who would not benefit Northrop through other relationships outside of the Plans, considered inappropriate screening information and failed to ensure an unbiased and objective search process.

D.     Breached their fiduciary duty to monitor and control the costs associated with the operation of the Plan and its obligation to fully disclose fee and expense information to each Plan's participants both by permitting excessive and unreasonable investment management fees in certain investment options and with certain investment managers, and by failing to monitor, control, and adequately disclose excessive and unreasonable administrative fees, including millions of dollars in excessive fees paid by the Plans to Northrop itself.

E.     With respect to monitoring costs, failed to prudently determine whether the Plans' investment-related costs represented a fair price in relation to the level and quality of services being provided to participants.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

F.    Either failed to consider or knowingly disregarded relevant and reliable surveys, databases, and industry benchmarks when assessing the reasonableness of the Plans' investment-related costs, and failed to report the excessiveness of these costs to the Investment Committee.

G.    Failed to verify that each portfolio was being managed in compliance with the investment guidelines and that each met the performance objectives stated in the Investment Policy Statement in that they permitted managers and Plan investment options with excessive fees and consistently poor performance to remain in the Plans.

H.    Failed to review the actual results achieved by the investment portfolios in that the investment returns reviewed by Defendants were inconsistent, incorrect, and different from the actual results achieved by the investment portfolios.

88.    By this conduct, Defendants violated the governing Plan documents, breached their fiduciary duties to operate the Plans for the exclusive benefit of Plan participants, caused damages to the Plans, and are liable to the Plans for equitable relief including, but not limited to, an accounting, restitution and disgorgement.

## **Failure to Remedy Violations of ERISA**

89.    Effective May 10, 2002, Defendant Ryan Hamlin assumed the fiduciary duties previously held by Rose Mary Abelson, which she had been or should have been performing as a member of the Investment Committee.

90.    As the corporate director of investments and a member of the Investment Committee, Mr. Hamlin knew or should have known of Ms. Abelson's breaches of fiduciary duty through means including but not limited to:

A.    His receipt and knowledge of the Investment Policy Statement;

CV 06–06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

B.      His receipt and knowledge of the Gildner Studies and other

information demonstrating the excessiveness of administrative fees;

C.      His receipt and knowledge of fee and performance information

demonstrating the imprudence of Plan investment options and

investment managers; and

D.      His understanding of the screening and selection criteria for Plan

investment options, including criteria based on their suitability in, and

discounts provided to, the defined benefit plans and other Northrop

corporate accounts.

91.      Defendant Ryan Hamlin had an obligation to cure the fiduciary

breaches committed by Defendant Abelson prior to the time Hamlin took on her

responsibilities.

92.      Pursuant to ERISA § 404(a), 29 U.S.C. §§1104(a) and ERISA §

405(a)(3), 1105(a)(3), Defendant Hamlin's failure to cure Ms. Abelson's prior

breaches constitutes an actionable breach of Mr. Hamlin's fiduciary obligations to

the Plans.

## COUNT I

### Breach of Fiduciary Duty – ERISA § 502(a)(2)

93.      Plaintiffs restate and incorporate the allegations contained in

paragraphs 1 through 92 as though fully set forth here.

94.      As set forth in detail above, the Defendants breached their fiduciary

obligations to the Plans, participants and beneficiaries in the Plans and the members

of the Class and engaged in prohibited transactions by, among other conduct to be

proven at trial:

A.      Causing the Plans to enter into agreements with service providers

under which the Plans pay/paid – directly or indirectly – fees and

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

expenses that were, or are, unreasonable and/or not incurred solely for the benefit of participants and beneficiaries of the Plans;

B.   Allowing the Plans to pay – directly or indirectly – fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of participants and beneficiaries of the Plans;

C.   Failing to monitor the fees and expenses paid by the Plans and, by such failure, causing and/or allowing the Plans to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of participants and beneficiaries of the Plans;

D.   Failing to inform themselves of trends, developments, practices, and policies in the retirement, financial investment and securities industry that affect the Plans; and failing to remain aware and knowledgeable of such trends, practices and policies on an ongoing basis, so that the Plans were caused to pay more than reasonable expenses;

E.   Failing to make investment management and administrative decision solely in the interest of the Plans, Plan participants and beneficiaries;

F.   Failing to utilize prudent selection and monitoring criteria when evaluating investment managers;

G.   Failing to remedy prior breaches of fiduciary duty;

H.   Engaging in impermissible self-dealing and prohibited transactions with respect to the administrative services provided by Northrop Grumman to the Plans;

I.   Failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

the Plans were reasonable and incurred solely for the benefit of participants and beneficiaries of the Plans;

J.  Failing to appoint fiduciaries who fulfilled their fiduciary duties, failing to monitor and oversee those fiduciaries in the performance of their duties, and failing to remove any fiduciaries who breached their fiduciary duties;

K.  Causing the Plans to engage in transactions that Defendants knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan;

L.  Dealing with the assets of the plan in Defendants' own interests or for their own account;

M.  Receiving consideration for their own personal account from a party dealing with the Plans in connection with a transaction involving the assets of the Plans.

N.  By the foregoing conduct, failing to exercise the care, skill, prudence and diligence that a prudent person would when acting in like capacity and familiar with such matters as required by 29 U.S.C. §1104(a).

O.  By the foregoing conduct, engaging in prohibited transactions under ERISA § 406, 29 U.S.C. §1106.

95.     As set forth in detail above, as a result of these breaches, Plaintiffs, the Plans, and the participants and beneficiaries of the Plans have suffered financial losses and damages.

96.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), 29 U.S.C. § 1132(a), the Defendants are liable to restore to the Plans the losses they experienced as a direct result of the Defendants' breaches of fiduciary duty and are

liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

97.    Pursuant to ERISA § 405(a), 29 U.S.C. § 1105, and ERISA § 502(a), 29 U.S.C. § 1132(a) the Defendants are liable for the fiduciary breaches of their co-fiduciaries as detailed above in that Defendants: (1) had knowledge of the fiduciary breaches of their co-fiduciaries yet failed to make reasonable efforts under the circumstances to remedy the breaches; (2) in breaching their fiduciary obligations, enabled other fiduciaries to commit breaches; and (3) participated knowingly in an act constituting a violation of another's fiduciary duty.

WHEREFORE Plaintiffs, on behalf of the Plans and all similarly situated participants and beneficiaries of the Plans, respectfully request that the Court:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- order the Defendants to make good to the Plans all losses that the Plans incurred as a result of the conduct described above and to restore the Plans to the position each would have been in but for the breaches of fiduciary duty;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and/or cause the Defendants to disgorge such monies and return them to the Plan;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- award actual damages to the Plans in the amount of their monetary losses;

- require Defendants to render an accounting as set forth above;

- surcharge against Defendants and in favor of the Plans all amounts involved in transaction which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;
- order the disgorgement of all fees paid by the Plans to Defendants;
- order the disgorgement of all monies saved by Northrop, including other corporate plans, as a result of investment management discounts and other savings from the decision to use of managers in the defined benefit plans and other corporate accounts as managers in the Plans;
- order costs and attorney's fees pursuant to ERISA § 502(g) and the common fund doctrine;
- order equitable restitution or other available equitable relief against the Defendants;
- order the payment of interest to the extent it is allowed by law; and
- grant any other and further relief the Court deems appropriate.

## COUNT II

### Other Remedies for Breach of Fiduciary Duty – ERISA § 502(a)(3)

98.     Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 97 as though fully set forth here.

99.     As an alternative to the causes of action stated in Count I, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

100.     Under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3), a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

101.     The Defendants, as fiduciaries of the Plans, occupy a position of trust and confidence in connection with the Plans, the Plans' assets, and participants and beneficiaries of the Plans.

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

102.    The Defendants have exclusive discretion and control over the Plans' assets and are strictly obligated to exercise that control "for the exclusive purposes of providing benefits to participants in the Plan[s] and their beneficiaries and defraying reasonable expenses of administering the Plan[s]."

103.    Although *only* participants and beneficiaries are entitled to the Plans' assets and to the benefit of the Plans' assets, in the absence of full and candid disclosure from the Defendants, participants and beneficiaries of the Plans do not know, and have no means of knowing, how their assets have been managed and disbursed.

104.    The Defendants occupy the position of a common law trustee in connection with the Plans, their assets, and their participants and beneficiaries.

105.    As set forth in detail above, the Defendants have caused and/or allowed the plan to pay – directly or indirectly – excessive and unreasonable fees and expenses to the Plans' service providers.

106.    The Defendants, and not the Plaintiffs, have and/or should have specific and detailed information regarding how the Plans' assets have been treated and disbursed in this regard.

107.    The Court should order that the Defendants render an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plans and their assets.

108.    Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees and expenses incurred by the Plan and/or paid to third parties, whether paid directly by the Plans or indirectly transferred among Plan service providers or other third parties.

109.    Plaintiffs respectfully request that, to the extent that the Defendants do not or cannot account for all such transactions and their propriety under ERISA, the

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

Plan Document and other applicable law, the Court surcharge against the Defendants all amounts for which they cannot account.

110.   Plaintiffs further request disgorgement of all fees paid by the Plans to Northrop, of all fees paid by the Plans to investment managers selected because for reasons other than the best interests of the Plans, and for disgorgement of all monies saved by Northrop through reductions in investment management fees and other benefits to Northrop's accounts, including the defined benefits plans, as a result of investment management decisions made in the Defined Contribution Plans at issue in this case.

111.   Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above, and to cause them to cease in order for the Plans' participants and beneficiaries to receive the full benefit of their retirement savings in the future.

WHEREFORE Plaintiffs, on behalf of the Plans and all similarly situated participants and beneficiaries of the Plans, respectfully request that the Court:

- find and declare that the Defendants have breached their fiduciary duties as described above;

- order the Defendants to make good to the Plans all losses that the Plans incurred as a result of the conduct described above and to restore the Plans to the position each would have been in but for the breaches of fiduciary duty;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and/or cause the Defendants to disgorge such monies and return them to the Plan;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- award actual damages to the Plans in the amount of their monetary losses;

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET, STE. 900
ST. LOUIS, MISSOURI 63102

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET , STE. 900
ST. LOUIS, MISSOURI 63102

- require Defendants to render an accounting as set forth above;

- surcharge against Defendants and in favor of the Plans all amounts involved in transactions that such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

- order the disgorgement of all fees paid by the Plans to Defendants;

- order the disgorgement of all monies saved by Northrop, including other corporate plans, as a result of investment management discounts and other savings from the decision to use of managers in the defined benefit plans and other corporate accounts as managers in the Plans;

- order costs and attorney's fees pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and the common fund doctrine;

- order equitable restitution or other available equitable relief against the Defendants;

- order the payment of interest to the extent it is allowed by law; and

- grant any other and further relief the Court deems appropriate.

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**

1

2

DATED: September 3, 2010

3

By:   _/s/ Jerome J. Schlichter_
Jerome J. Schlichter (SBN 054513)

4

Nelson G. Wolff (admitted *pro hac vice*)
Jason P. Kelly (admitted *pro hac vice*)

5

Mark G. Boyko (admitted *pro hac vice*)
SCHLICHTER, BOGARD & DENTON

6

*Interim Lead Counsel for All Plaintiffs*

7

*and Counsel for Grabek Plaintiffs*

8

William A. White (SBN 121681)
HILL, FARRER & BURRILL LLP

9

*Local Counsel for Grabek Plaintiffs*

10

11

Stephen J. Fearon, Jr.
SQUITIERI & FEARON LLP

12

*Counsel for Heidecker Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHLICHTER, BOGARD, AND DENTON
ATTORNEYS AT LAW
100 SOUTH FOURTH STREET , STE. 900
ST. LOUIS, MISSOURI 63102

- 31 -

CV 06--06213-MMM(JCX)

**PLAINTIFFS' REVISED CONSOLIDATED SECOND AMENDED COMPLAINT**