Nancy G. Ross (*Pro Hac Vice*)
nross@mwe.com
John A. Litwinski (*Pro Hac Vice*)
jlitwinski@mwe.com
McDERMOTT WILL & EMERY LLP
227 West Monroe Street
Chicago, IL  60606-5096
Telephone:  312.372.2000
Facsimile:   312.984.7700

Chris C. Scheithauer (State Bar No. 184798)
cscheithauer@mwe.com
McDERMOTT WILL & EMERY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Telephone:  949.851.0633
Facsimile:   949.851.9348

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NORTHROP GRUMMAN CORPORATION ERISA LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Actions | Master File No. 06-CV-6213 MMM (JCx)<br><br>**DEFENDANTS' FOURTH NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF SUMMARY JUDGMENT:**<br><br>**NINTH CIRCUIT'S DECISION IN** *TIBBLE V. EDISON INTERNATIONAL*<br><br>DATE HEARD:  May 16, 2011<br>TIME:             10:00 am<br>COURTROOM:  780<br><br>[Courtroom of the Honorable Margaret M. Morrow] |

## I. INTRODUCTION

Defendants submit this Fourth Notice of Supplemental Authority in connection with their pending Motion for Summary Judgment filed on March 28, 2011 and heard by the Court on May 16, 2011. On Thursday, March 21, 2013, the Ninth Circuit issued its ruling in Tibble v. Edison International, No. 10-56406 (9th Cir. March 21, 2013). A copy of the Tibble decision is attached as Exhibit A.

The Tibble decision is important for multiple reasons, including that: (1) it affirms a decision out of the Central District of California involving a case with very similar legal and factual issues to this case; (2) the district court's various decisions in Tibble were heavily relied upon by Defendants in their summary judgment briefing in this case as well as repeatedly cited by this Court in its Tentative Order[1] on Defendants' Motion for Summary Judgment ("Tentative Order"); and (3) it constitutes controlling precedent on key issues in this case.[2] The Tibble decision supports granting Defendants' motion for summary judgment in its entirety.

## II. TIBBLE CONFIRMS THAT THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS AND THAT THE "CONTINUING VIOLATION" THEORY DOES NOT REVIVE CLAIMS

### A. Three Year Statute of Limitations

In Tibble, the Ninth Circuit, consistent with prior rulings, rejected the "continuing violation theory" and reaffirmed that once a plaintiff has actual knowledge of an alleged fiduciary breach, the three year statute of limitations is not restarted by "maintenance of the status quo." Id. at 10 (citing prior precedent). Thus, once a plaintiff has actual notice of an alleged breach of an ERISA duty, the

---

[1] The Court has not issued its final order.

[2] In the briefing in this case, Plaintiffs argued that the district court's decision in Tibble was decided "in error." See Plts. MSJ Opp., p. 16:23 (Dkt # 500). The Ninth Circuit has now completely affirmed the district court's Tibble decision.

three year statute of limitations commences to run and is not restarted even if there are "a series of discrete but related breaches" within the three year period. See Phillips v. Alaska Hotel & Rest. Employees Pension Fund, 944 F.2d 509, 520-21 (9th Cir. 1991) ("While the trustee's conduct may be viewed as a series of breaches, all were of the same character…. Once a plaintiff knew of one breach, an awareness of later breaches would impart nothing new.") See Tibble at 10 (approvingly citing Phillips as rejecting the "continuing violation" theory).

As this Court pointed out in its Tentative Order, Plaintiffs' claim that the investment and administrative fees were "excessive and unreasonable" is barred by the statute of limitations because they had sufficient notice of such fees more than three years before they filed the lawsuit. See Tentative Order, p. 46-49. In its Tentative Order, this Court noted that "Plaintiffs contend that 'each deduction of excessive fees'" was a separate breach that started the statute of limitations anew. Tentative Order, p. 47-48. This Court's Tentative Order rejecting Plaintiffs' assertion was based on the Ninth Circuit's prior decision in Phillips, the holding of which has not been reaffirmed by Tibble.

### B.  Six Year Statute of Limitations

In the briefing in this case, Defendants argued that even if Plaintiffs' claims are not barred by the three year statute of limitations, they are barred by ERISA's six year statute of limitations. See e.g., Dfts. Reply Brief at 5:13-14 (Dkt# 458) ("Plaintiffs improperly challenge investment-related transactions and an administrative structure in place more than six years before plaintiffs filed suit."). See also Dfts. MSJ Brief at 16 (Dkt # 500) ("the procedure of hiring Northrop personnel to provide certain administrative service also was set in place more than six years ago, as evidenced by the 1999 ASA.").

Here, Plaintiffs argued that the "continuing violation doctrine" should apply because Defendants continued the same practice of "paying Northrop out of the plans" pursuant to the ASA within the six year period. See Plts. Opp. at 16:3-4.

1  Plaintiffs argued that the district court in Tibble was wrong to reject the "continuing
2  violation doctrine."  See Plts. Opp. at 16:23-25 ("Tibble is in error on this point.
3  The authority it cites concerns the three-year actual knowledge limitation, not the
4  six-year period.").  To the extent that there was any real debate on this point, the
5  Ninth Circuit has now conclusively determined the point in affirming the district
6  court's analysis in Tibble.

7  Specifically, in Tibble, the Ninth Circuit rejected the same argument
8  Plaintiffs assert in this case stating that it "would make a hash out of ERISA's
9  limitation period and lead to an unworkable result."  Tibble at 11 (noting that it had
10 previously declined to read a "continuing violation" exception into the three year
11 statute of limitation and extending that same rationale to the six year statute of
12 limitation).  The Ninth Circuit noted that there can be no claim for a "failure to
13 remedy" the prior alleged breach outside of the six year statute of limitations when
14 the fiduciaries merely *maintained* the status quo (i.e., kept in place the same
15 allegedly unreasonable arrangement begun outside the statute of limitations period
16 even though fees were paid in subsequent time periods under a system that
17 maintained the status quo):

18 > As with the application of any statute of limitations, we recognize that
19 > injustices can be imagined, but section 413(1) "suggests a judgment by
20 > Congress that when six years has passed after a breach or violation,
21 > and no fraud or concealment occurs, the value of repose will trump
22 > other interests, such as a plaintiff's right to seek a remedy."

23 Id. (internal citations omitted). Thus, there is no "continuing violation" theory that
24 will revive any ERISA claim with respect to "any responsibility, duty, or
25 obligation" [ERISA § 413] for an arrangement entered into outside of either the
26 three or six year statute of limitations.  Thus, Plaintiffs cannot maintain their claims
27 here that fees continued to be paid during the most recent three or six year
28 limitations period pursuant to an arrangement entered into outside of the statute of

limitation period (such as the fees associated with an investment option or pursuant to the Administrative Services Agreement).

### C. Alleged Breach of Duty By Maintaining The ASA

In its Tentative Order, this Court applied ERISA's statute of limitations (both under the three year and six year statutes) to find that most of Plaintiffs' claims were time barred, including any claim that Defendants improperly entered into the Administrative Services Agreement (ASA) or made payments to Northrop pursuant to that ASA, regardless of whether those payments continued into the six years prior to the filing of the lawsuit. See, e.g. Tentative Order, p. 54. This Court also ruled in its Tentative Order, however, that the statute of limitations may not bar "whether defendants breached their duty of loyalty by *maintaining* the contract with Northrop after September 28, 2000." See Tentative Order, p. 54 (emphasis added); see also id. ("Plaintiffs have proffered evidence from which a trier of fact could conclude that the Administrative Committee breached their fiduciary duties in *maintaining* contracts for administrative services…") (emphasis added).

As noted above, however, the Ninth Circuit held that simply *maintaining* the status quo (i.e., an arrangement for paying fees under an existing agreement), without a significant change in circumstances, is *not sufficient* to restart the statute of limitations. See Tibble at 10-11. Accordingly, Tibble also supports summary judgment in favor of Defendants on the sole ground that this Court tentatively considered appropriate for trial.[3]

Moreover, the holding in Tibble is consistent with the recent Fourth Circuit decision in David v. Alphin, 2013 U.S. App. LEXIS 961 (4th Cir., Jan 14, 2013), that also rejected a claim based on a "continuing to maintain" theory.[4] As

---

[3] The same statute of limitations applies to claims for breach of fiduciary duty, breach of the duty of loyalty, and for prohibitive transactions. See ERISA 413, 29 U.S.C. § 1113 ("No action may be commenced under this title with respect to any fiduciary breach of any responsibility, duty, or obligation under this part…").

[4] David v. Alphin was the subject of Defendants' Third Notice of Supplemental Authority filed in this case.

1  explained by the Fourth Circuit, only affirmative acts are relevant because ERISA
2  does not impose any "continuing obligation to remove, revisit, or reconsider" prior
3  decisions. Id. at * 35. Thus, both Tibble and Alphin are new authority disposing of
4  the claim that Defendants breached a duty by "maintaining" the ASA with Northrop
5  after September 28, 2000. See Tentative Order, p. 54.

### D. As A Matter Of Law, The Amount Of Investment-Related Fees Was Not Excessive

Aside from the statute of limitations issues, Tibble also demonstrates, as a matter of law, Plaintiffs' claim for excessive investment-related fees is without merit. The Ninth Circuit noted that the Seventh Circuit has dismissed a similar "excessive fees" case with the menu of options ranging from .07 to 1% across a pool of twenty funds. Tibble at 42. With regard to the expense ratios in Tibble, the Ninth Circuit noted that the expense ratios ranged from .03 to 2% and that such a range was not "out of the ordinary to make the funds imprudent." Tibble at 42. As noted by Defendants here in their summary judgment briefing, the investment management fees for the core funds offered by Northrop undisputedly ranged, depending on year, from a low of .04-.05% to a high of .81%-1.15%. See, e.g., Dfts' Reply MSJ Brief (Dkt # 458), p. 9:25-28. Those fees are comparable to or lower than the fees the Ninth Circuit and other courts have held are not excessive or imprudent as a matter of law. Id.; see also Tibble at 42-43.[5]

Accordingly, Defendants request that this Court take notice and entertain Tibble v. Edison International because it addresses similar issues and arguments pending in this case and constitutes controlling authority guiding this Court's ruling on Defendants' pending motion for summary judgment.

---

[5] The Ninth Circuit also affirmed the small trial verdict in favor of the Tibble plaintiffs on the grounds that there were three imprudent retail investment funds added to the Plan's investment menu within the statute of limitations period that the defendants failed to properly investigate before adding them.

| | | |
|---|---|---|
| 1 | Dated: <u>March 29, 2013</u> | McDERMOTT WILL & EMERY LLP |
| 2 | | By: <u>/s/ Chris C. Scheithauer</u> |
| 3 | | Chris C. Scheithauer<br>*Attorneys for Defendants* |

# **CERTIFICATE OF SERVICE**

I certify that on March 29, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California, by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have forwarded the foregoing documents by U.S. Mail to the following non-CM/ECF participants:

**DEFENDANTS' FOURTH NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF SUMMARY JUDGMENT**

Jay E. Sushelsky, Esq.
AARP FOUNDATION LITIGATION
601 E. Street, NW
Washington, DC  20049

Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.  I declare that I am I am familiar with the Firm's practice of collection and processing mailing.

Executed on March 29, 2013, at Irvine, California.

/s/ Chris C. Scheithauer

DM_US 41772368-1.071494.0013